## DYER v. ROBINSON et al.

(Circuit Court, S. D. Ohio. W. D.   April 13, 1899.)

1. LESSORS—DEFECTIVE BUILDING—LIABILITY TO LICENSEES OF LESSEES.
   Lessors of a building, not having known of a defect therein whereby the ceiling fell, are not liable to persons present therein by license of the lessees and injured thereby.

2. LESSEES—DEFECTIVE BUILDING—LIABILITY TO LESSEES.
   Lessees of a theater are not liable to persons therein by their license injured by the falling of the roof from the giving way of a truss rotted at the end by water from the roof leaking about a spout passing down the wall; the only thing giving notice thereof being the leaky condition of the roof, and the stains and appearance of dampness on the outside wall, and this condition having commenced long before the lease.

Thos. L. Michie, for plaintiff.

John R. Sayler, Louis Kramer, Charles Evans, and John W. Warrington, for lessors.

Jones & James, for lessees.

THOMPSON, District Judge (orally). I have had occasion since the last trial of this cause to make a careful examination of the questions involved, and, in view of the conclusions I have reached, it is not necessary to take up time in further argument. I may as well dispose of these motions now.

The ceiling and dome of the opera house fell, injuring the plaintiff, and he charges that his injuries were caused by the negligence of the defendants, the lessors and the lessees, in permitting this building to become unsafe and remain in that condition until the disaster resulted. In determining the question of negligence, it is necessary, first, to ascertain what duty the defendants owed to the plaintiff, the failure to perform which constituted the negligence.

As to the lessors: What duty were they under to the plaintiff to keep and maintain this building in a condition of safety? If they were under no duty, if they owed him no duty in that respect, they are not liable for the consequences of the breaking down of the ceiling and the falling of the dome of this building. Ordinarily, when the owner of buildings, whether devoted to public or to private uses, lets them to another, and surrenders possession and control, he is not responsible to the tenant, or to those who may come upon the premises through the invitation of the tenant, for any unsafe condition thereof, whether it existed prior to and at the time of the letting or arose afterwards. If Brady & Stair desired to obtain a lease of this opera house building, it was there for their inspection and examination; and if they were satisfied with it, and took a lease, and the control and possession of it was delivered to them, the lessors, the Robinsons, are under no liability to them for the unsafe condition

of the building, because the rule of caveat emptor applies in such case. They take it as they find it; and if there be defects, if it be in an unsafe condition, and they, or those in privity with them, suffer injury in consequence thereof, they have no claim upon the lessors, because it is their duty to ascertain its condition, and they take it in the condition in which they find it. It is there for their inspection. They have the opportunity to judge for themselves whether it is in a condition to be useful to them, and if it turns out that there is anything wrong with it, if they have made a bad bargain, they must abide it, unless they have been misled, defrauded, or deceived. That presents another question. The lessors' liability for any unsafe condition of the property at the time of the transfer ends when they turn the property over, unless there be some latent hidden defect of which the lessors know and the lessees do not know, nor by reasonable inspection and examination at the time could know,—something so hidden as not to be open to their observation; not to be open to any examination which they would be required to make, or which any one would be required to make under the circumstances. If the lessors, knowing the defect, conceal it,—if they practice a deceit upon the lessees,—they are responsible; but some of the authorities hold that in cases of fraud and deceit the fraud and deceit must be active; that there must be a purpose and intention to deceive, to mislead, to misrepresent. I prefer, however, to take the broad ground, which I think the authorities sustain, that in such case a duty is cast upon the lessors to disclose the defect, and if they fail to do so they are liable for injurious consequences. Suppose the Robinsons at the time of the letting knew that the end of the truss had rotted so that at any moment it might fall down, as it did do, and failed to disclose that fact to the lessees, contemplating, as they must have done, just such a disaster as occurred; would not they have been liable for the injuries caused by the disaster? In such a situation the law would impose a duty upon them to disclose the fact, and it would not be necessary to show active misrepresentation and concealment to establish their liability. But, when the disclosure is made, then the lessees take up the burden, and it is for them to put the premises in safe condition if they propose to invite people to come there. At the former trial there were citations of authority, and a line of cases relied on, which I want now to distinguish, lest counsel may think I have overlooked them. I have been talking of the duty of the lessors and the lessees to the persons with whom they deal; but there is the duty which lessors and lessees owe to strangers with whom they have no contractual relations. If the owners of a building allow it to become unsafe; if they allow a nuisance to grow up, or create a nuisance in the building; if, for instance, they should allow the rain to pour down into the wall of the building until the wall becomes unsafe, and falls down and kills a passer-by in the alley or street,—then it does not matter who is in possession of the property, whether the owners or the lessees; the owners are liable for the injury, and they cannot shift the responsibility which the law casts upon them by saying that they have let the premises to somebody else. But the cases which support that doctrine have no ap-

plication to the case at bar. This is a question between the lessors, and lessees and the person injured, who was there at the time of the disaster by the invitation of the lessees. Now in this case, as far as the lessors are concerned, there is no evidence, and it is not pretended by anybody, that the lessors knew of this rotten truss. Therefore they could not have failed in the duty which the law would cast upon them to make disclosure of any secret, latent, or hidden defect which might render the building unsafe and dangerous. And the lessors stand upon the ordinary, well-settled rule that, having surrendered possession of the property to the lessees, they are not responsible for the condition of the building, to the lessees or to those whom the lessees may invite there. If this unsafe condition existed at the time of the lease (and there is evidence here which would warrant the jury, in finding that it did), yet it was something of which the lessors had no knowledge, and therefore they could practice no deceit with reference to it, nor fail in the duty of disclosure; and, under the well-settled rule, there was no implied warranty on their part that the building was fit and suitable for the purpose for which it was leased, nor any express warranty to that effect in the lease; and therefore when it passed out of their control, into the hands of the lessees, their responsibility for what might happen afterwards on account of any condition of unsafety in the building ended, and they were under no duty to the lessees or to those in privity with them to maintain the building in a condition of safety. The motion on behalf of the lessors must therefore be sustained.

As to the lessees: If the lessees knew of this condition of unsafety, whether it arose before or after the making of the lease, or if by the exercise of ordinary care they could have known of it, then they are liable, and must answer in damages to the plaintiff; and the question I am called upon to determine is whether there is any evidence introduced by the plaintiff which tends to show (and I have not in mind now the doctrine of the scintilla) negligence on the part of the lessees in failing to know of this unsafe condition, and in failing to take the necessary steps to prevent the disaster which occurred. If there is, it will be my duty to submit it to the jury and take their judgment and verdict upon it. It is not the function of the court to determine questions of fact, and it is a function which the court must be careful not to usurp. Nobody contends that the lessees knew anything about this unsafe condition; that is, knew that this truss was rotten; but the claim is that they ought to have known it; that the evidence already introduced shows facts and circumstances sufficient to put them upon notice that would require them to make investigations which would have disclosed this condition, and thereby this disaster might have been averted. That is the question, and if the facts disclosed by the evidence are of a character which would tend to put them upon notice, requiring such investigations, then the case must go to the jury, whatever opinion the court may have as to the sufficiency of the evidence. But, if the circumstances do not tend in that direction, it would be a violation of duty upon the part of the court to submit the case to the jury, resulting, possibly, in the confusion of

things, in a verdict which would not be in accordance with the real facts and with the law. Now, what was there in the circumstances presented, pointing to the rotten condition of this truss, which would put anybody upon notice, and require such investigations as would lead to the discovery of that condition? The evidence at this trial has shown more fully and satisfactorily than before the condition of the roof and the wall, and the dampness in the wall which probably led to the condition of decay in the truss. Looking back now, we can see the process which led up to this condition; but looking from the other side, as it appeared before the disaster, what was there to put a man of ordinary prudence and care upon notice which would require him, under penalty of damages such as are asked in this case, to institute an investigation which would have disclosed this condition? That is the real question. Because no extraordinary or unreasonable care is required, as I had occasion to say to the jury on the former trial. The law does not require that the roof should be taken off, and the wall torn down, and the condition of every truss examined, because possibly some condition of unsafety might be found. That would be unreasonable. That would put an end to the erection and use of such buildings. The law only requires reasonable care and prudence, and we, who go by invitation to such buildings, have a right to demand that, and no more. Beyond that we must take the chances.

The evidence for the plaintiff (and that is all we have before us) shows that there was a spout down the wall, near the end of this truss, leading from the gutter or valley in the roof, through a box set in the wall, and passing through the wall, and that the gutter, box, and spout were in a condition of very bad repair, and had been for a number of years, and that, in consequence of this condition of repair, when rains fell or the snow came the water would pass into the wall around about this truss; and that there was a condition of dampness in the wall following heavy rains or a heavy fall of snow; and the inference is drawn, which may be well founded, that through this dampness and moisture, communicated in this way, this condition of rot and decay grew up, but the outward indications of which were to be found only in stains on the wall inside, in discoloration, and an appearance of dampness on the outside wall, and in the leaky condition of the roof. What notice would these indications give to the lessees? Why, the first thing, it seems to me, the lessees would think of, would be that the leakage would spoil the paper and decorations inside, and that it might after a while cause permanent injury to the wall; but what prudent man, what careful man, would ever have dreamed, from these appearances, that a rot would set in at the end of the truss, and as a consequence the truss would break off, as if sheared off, and let the ceiling and dome down upon an audience seated in the auditorium below? Who could have reasonably contemplated anything of that kind, or the possibility of any such condition there? Can it be said, when it is presented to you upon these indications, that the reasonable man, the prudent man, the careful man, would at once send for mechanics and have the roof taken off and the wall taken down,

and the end of the truss exposed, in order that he might ascertain whether it was rotten or not? In my judgment, it would point to many things besides that, and to that last of all. If it be said, however, that if reasonable care had been exercised in keeping the roof in repair, so as to prevent it from leaking, the truss would not have rotted, and that therefore the lessees should answer for their negligence in failing to keep the roof in repair, even though they could not have anticipated the consequences of their negligence, the refutation of such a claim is found in the fact, as appears from the evidence, that this rot and decay began many years before the letting of the premises, and only culminated in the disaster within a little more than a year after the letting.

I do not think I ought to permit this case to go to the jury upon the suggestion that the case turns upon the question of whether the rot was the result of dampness caused by allowing the water from the roof to run into the wall, when the real question to be considered is whether the lessees were guilty of negligence in failing to discover the rot, and I am unable to find any evidence tending to show want of reasonable care and prudence on the part of the lessees in that respect. The motion of the lessees therefore will be sustained, and the jury will be instructed to return a verdict for the defendants.