Hillsborough,
Dec. 6, 1932.

RICHARD JACKSON, *by his next friend,*

*v.*

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE *& a.*

*Michael F. Shea, Timothy F. O'Connor* and *Myer Saidel (Mr. Saidel* orally), for the plaintiff.

*Warren, Wilson, McLaughlin & Bingham (Mr. Bingham* orally), for the defendants.

PEASLEE, C. J. The defendants' motions for nonsuits present issues similar to those in *Frear* v. *Company,* 83 N. H. 64. Argument has been presented as to the nature of invitation required to charge one with the duty to use care as to the condition of premises, and also as to the sufficiency of proof of any invitation.

It is urged that the decision in the *Frear* case is.faulty, in that it fails to consider the alleged necessity for proof of a quite specific reliance upon the defendants' undertaking. In view of the contention now made, the grounds for the legal conclusions reached in that case have been reconsidered.

If either defendant extended an invitation to the public to visit the park as the invitor's place of amusement, it is answerable according to the expectable consequences of such invitation. *Pickford* v. *Abramson,* 84 N. H. 446, and cases cited. Reasonable men would understand that people would come there who never saw the original document extending the invitation, and who never heard who owned or controlled the park or extended the invitation. They may come simply because they see others entering what is evidently a place for public recreation and amusement. Yet these last comers are just as truly invited as was the first visitor who came because he had read the signed advertisement.

Having thus induced them to come there, the invitor is under a duty to use reasonable care to see to it that the premises are safe. The duty is imposed because of the invitation extended. It is imposed in the application of the general rule of duty that one's conduct must be reasonable under all the circumstances of the case. The invitation and its acceptance create a relation between the parties, and from this relation the duty arises.

It is strongly urged on behalf of the defendants that the imposition of duty can be worked out only upon a theory of estoppel, that having extended such an invitation the invitor is estopped to deny control of the premises, and therefore is under a landowner's duty to see to it that they are in a reasonable condition.

The simpler statement of the obligation is that it is commensurate with the undertaking of the invitor. The situation is similar to that where one undertakes to act as a physician. He is answerable for failure to exercise the care and skill of one who is what the defendant has assumed to be. *Burnham* v. *Stillings,* 76 N. H. 122. It is not a

matter of contract, for the obligation to use such care and skill as the undertaking reasonably calls for is imposed because of a privity of duty as distinguished from that of contract. *Pittsfield &c. Co.* v. *Company,* 71 N. H. 522; *Edwards* v. *Lamb,* 69 N. H. 599.

"The defendant having assumed to act toward a known situation, was bound by the usual rule of reasonable conduct." *Knowles* v. *Company,* 77 N. H. 268, 270. "If he assumes to act, his conduct must be reasonable. *Huskie* v. *Griffin,* 75 N. H. 345." *Kambour* v. *Railroad,* 77 N. H. 33, 46. Liability is not imposed because the invitor is estopped to deny control of the premises, but because he assumed a duty to use care as to their condition. Such assumption goes with and is incidental to the invitation.

But whether this be called an estoppel to deny control, or an assumption of obligation to take precautions, is not very important here. The difficulty with the defendants' position is that, granting that there must be an estoppel, all the elements therefor are present in the case of invitation to the general public. As before stated, the invitation once put in circulation is extended in a variety of ways. People repeat it to other people. They repeat it not only by word, but also by the act of going to the park. All this is to be foreseen by the originator of the invitation. It is not only foreseen but desired, and it is all a part of his invitation. The cause for people's going there is the invitor's act.

But it is said that there must be reliance upon the invitation. This is true in a limited sense only. Without any conscious thinking upon the subject, the visitor does in fact rely upon it, just as he does upon that of the storekeeper or hotel landlord. He does not reason out his legal rights in advance, nor demand the name of his invitor before he enters. But when he is injured the inquiry begins. Who was it asked me to come in here, as to his place of amusement, or of business, or of rest and refreshment? And when the responsible party is found, he is justly charged with the truths and consequent obligations his invitation implied. *Pickford* v. *Abramson,* 84 N. H. 446. He is answerable to the party who has been injured through action taken in consequence of the representation. Loss or damage caused by the representation is recoverable. *Conway Bank* v. *Pease,* 76 N. H. 319.

The rule announced in *Frear* v. *Company,* 83 N. H. 64, is reaffirmed. If the defendants, or either of them, were shown to have invited the public to visit the park as the invitor's place of amusement and recreation, the plaintiff, who went there as one of the public, would be en-

titled to demand that the defendant exercise reasonable care to see to it that the premises were safe for the intended use.

The further position of the defendants is that there was no sufficient evidence of invitation from either of them. As to the Public Service company it appeared that it owned the fee in the park, but had leased it to one Williams. There was no evidence of any control of the premises by the landlord. The defect complained of was a transient one, caused by a deficient attempt to repair, undertaken by the lessee or his sub-tenant; and the lease bound the tenant to make the repairs.

While it was shown that there were occasional inspections of the premises by the landlord, there was nothing in the nature of control. It was the ordinary case of finding out what the tenant was doing upon and with the premises.

A large electric sign displaying the words "Pine Island Park" was situated upon the company's land outside the leased premises. This had been erected some years earlier by the company's predecessor in title, or by the street railway. There was no evidence that either of the defendants had any control over it after the lease to Williams, and there was positive testimony that neither of them maintained it.

In addition to the foregoing there were in evidence advertisements inserted by the company in the Manchester City Directories for 1928 and 1929. Each occupied a full page. It began with a list of officers, followed by the name of the company in large type. After that, in small type, is the matter relied upon here.

"Owning: Manchester Street Railway, Manchester and Nashua Street Railway.

"Trolley Trips: to Parks, Resorts and Picnic Grounds near the City, afford Pleasant and Healthful Amusements to Thousands of Pleasure Seekers.

"Pine Island Park: This beautiful pleasure resort, offers to its visitors all kinds of novelty amusements as well as dancing, canoeing and bathing.

"At Lake Massabesic: Is a Summer Theatre at which high class amusements may be enjoyed afternoon and evening during the summer season."

This is followed by a cut of the office building in Manchester and a list of eighty cities and towns served by the company.

There was evidence of dash-board advertising on the street railway cars, announcing events at the park. It appeared that this was a favor accorded without charge to every one along the railway lines.

There was no evidence that this advertising was done by either of the defendants, and positive testimony that it was not.

Certain newspaper advertisements of the park were offered in evidence. While they were not finally introduced, their character was testified to, and there was positive testimony that they were not published by either of the defendants.

It is apparent that no such situation was presented here as that shown in *Frear* v. *Company*, 83 N. H. 64, much relied upon by the plaintiff. In that case the railway was the lessee and advertiser of the park, and was in general control there. While it leased to Williams a concession for a Ferris wheel, it included in its newspaper advertising a specific invitation to come to the park and ride upon the wheel. There was no evidence of invitation from any other party.

Here, it may well be doubted whether the language of the advertisements in the directories could be construed as an invitation to visit the invitor's premises. But even if it could be, the obscurity of the invitation and the fact that other and very public invitation was extended by some one other than the defendants leaves the case short of any proof that the defendants' acts or words were cause for the public attendance at the park.

In so far as the Public Service company is concerned, it must be concluded that there was no evidence to warrant the submission to the jury of the claim that this defendant invited the public to the park as its property, or that the plaintiff came there in consequence of what it did.

There is a further claim of liability of the company upon the theory that a landowner who creates a nuisance upon his premises is liable for the results thereof, even though happening after he has parted with possession and control. *Bixby* v. *Thurber*, 80 N. H. 411. There are several reasons why the rule stated in that case is not applicable here.

In the present case there was nothing in the nature of a nuisance created by the landlord. The accident was caused by the dropping of a shutter; and the cause for that mishap was the insecurity of an improvised support, consisting of a small finish nail. The shutter was normally operated by the counterbalancing effect of sash cord, pulleys and weights. A cord being broken, the tenant, or his sublessee, fastened the shutter in a raised position with the nail very insecurely inserted in the frame around the shutter.

The defect in the premises was an incident to usual wear, common to every household. Its repair plainly devolved upon the tenant.

Moreover, the defect would never have caused the trouble which ensued. The sole result of the defect would be that the shutter would not stay up when raised. It was the active intervention of the tenant in opening the shutter and applying the insecure fastening which was the cause of damage. There is no liability of the owner under these circumstances. *Carter* v. *Company*, 58 N. H. 52.

Another conclusive answer to the claim advanced is that the doctrine of liability for nuisance upon premises does not apply as between a landlord and his tenant, or those claiming under the tenant. That doctrine depends upon a theory of unreasonable invasion of one's rights in premises by acts done upon or outside thereof. *Towne* v. *Thompson*, 68 N. H. 317. It cannot be relied upon by the tenant or his invitees as a ground for recovery from the landlord because of defects in the leased premises. *Gobrecht* v. *Beckwith*, 82 N. H. 415, and cases cited; *Burelle* v. *Pienkofski*, 84 N. H. 200. So long as there was no invasion of the premises by the landlord there was no liability for their condition, in the absence of warranty or deceit.

As there was no evidence of any causal fault for which the company was responsible, its motion for a nonsuit should have been granted.

The plaintiff also claims, as against the street railway, that its conduct in carrying the dash-board advertisements, in the management of traffic at its Pine Island Park terminal and in sending a conductor about the park just before the last car left at night, to see if there were belated passengers, would sustain a finding of invitation to the public to visit the park. It is sufficient to say that these facts do not warrant either a finding of control in fact, or of holding out an invitation which the public accepted.

There was no error in granting the railway's motion for a nonsuit, and that of the company should have been granted.

*Judgment for the defendants.*

All concurred.