Mrs. CHARLES C. CLARK, APPELLANT, v. CHASE HOTEL COMPANY, A CORPORATION, RESPONDENT.—74 S. W. (2d) 498.

St. Louis Court of Appeals. Opinion filed September 7, 1934.

*George G. Vest, Thomas Bond* and *David H. Robertson* for appellant.

*Holland, Lashly & Donnell, Holland, Lashly & Lashly* and *Oliver J. Miller* for respondent.

SUTTON, C.—This is an action to recover damages for personal injuries sustained by plaintiff by a fall on the floor of the massage room in a Turkish bath located in the basement of the Chase Hotel, situate at the northeast corner of Kingshighway and Lindell Boulevard, in the City of St. Louis.

The action was originally brought by plaintiff against the Chase Hotel Company and Mrs. Emma Thomas as defendants, but at the trial plaintiff voluntarily dismissed as to defendant Thomas.

Defendant Thomas was the proprietor of the Turkish bath, and the rooms in which she operated and conducted the bath, including the fixtures, were rented by her from defendant Chase Hotel Company, which company owned the premises in which the bath was located.

The petition alleges that at the time of the letting of said premises to defendant Thomas, and at all times since, the drain pipe and floor in one of the rooms were by the negligence of defendant Chase Hotel Company defectively constructed or placed in that the drain pipe was so placed that the opening thereof was on a higher level than the surrounding floor, and the floor immediately around and adjacent to the drain pipe was so placed or laid that it was on a lower level than the mouth or opening of the drain pipe, so that the water and

soap would not naturally flow or drain into said drain pipe, thereby rendering said floor wet and slippery and unsafe and dangerous for persons to walk on; that defendants knew or by the exercise of ordinary care should have known of said defective condition of said drain pipe and floor, and that same was unsafe and dangerous and likely to cause injuries to the customers of said defendant Thomas, including plaintiff, and said defendants negligently permitted said condition to continue, and negligently failed to repair the same; that on May 20, 1929, in the afternoon, plaintiff was a customer of defendant Thomas, and was being given a Turkish bath and the treatment incident thereto in said room, and that while she was taking said Turkish bath and receiving said treatment, and as the result of the negligence of defendants as aforesaid, the floor was wet and covered with soapy water, and plaintiff was thereby caused to fall and sustain the injuries for which she sues.

The cause was tried to a jury. At the conclusion of plaintiff's case in chief, the court, at the request of the defendant Chase Hotel Company, gave to the jury an instruction in the nature of a demurrer to the evidence. Thereupon plaintiff took an involuntary nonsuit as to said defendant. Having unsuccessfully moved to set aside her said involuntary nonsuit, plaintiff appeals to this court.

Appellant assigns error here upon the giving of the instruction in the nature of a demurrer to the evidence, insisting that the evidence was sufficient to take the case to the jury.

According to the testimony offered by the appellant, there were in the basement of the Chase Hotel two apartments designed for use as Turkish baths, the western of which was then used for women, and the eastern of which was used for men. North of these apartments was a long corridor, and between the two apartments there was a reception room with a door that led from the corridor into the reception room. In 1926 or 1927, defendant Thomas became a tenant from month to month of the western apartment. In the fall of 1928, she became a tenant from month to month of both of the apartments, together with the reception room between the apartments. The manager of the hotel making said latter arrangement agreed with defendant Thomas that the hotel company would keep the premises in first-class repair. Thereafter defendant Thomas changed about and operated the eastern apartment as a women's Turkish bath, and the western apartment as a man's Turkish bath. The accident, whereby plaintiff sustained the injuries for which she sues, happened in the eastern apartment. In said apartment there was a resting room, a locker room, a steam room, and a massage room. The accident occurred in the massage room. The flooring of the massage room was made of smooth tiling. Along the east wall of said room there were

two marble slabs. Along the north wall there was an electric cabinet. In the west wall there was an enclosure for a shower. In the center of the floor of the massage room there was a drain pipe. The massage room is sometimes referred to as the cabinet room. When a bather entered the massage room, she would first go to the electric cabinet and thereafter would be placed on one of the marble slabs, and massaged. She would then go to the shower enclosure and be showered, and would then go through a door in the northern part of the west wall and walk to the resting room. Between the massage room proper and the shower enclosure there was a sill to hold the water in the shower enclosure and prevent it from running into the massage room proper. There was a drain pipe in the shower enclosure which drained off the water used in the shower, so that no water from the shower ran into the massage room. At the time Mrs. Thomas, the tenant, took over the eastern apartment the floor of the massage room was slightly higher about the drain pipe in the center of the floor than the rest of the floor, and the floor was slightly lower at the northwest corner than elsewhere, so that the soapy water that dripped on the floor from the marble slabs where the massaging was done tended to drain toward the northwest corner and would not naturally run into the drain, but would have to be swept into the drain. It would only run into the drain by being swept into it. Mrs. Thomas frequently requested the hotel management to remedy this condition, but was told that it would cost too much to do so. Plaintiff contracted with Mrs. Thomas for a course of treatments for a rheumatic condition in her knees and ankles. She desired massage treatments. She had been recommended to do this by her physician. She was taking her fifth treatment under this arrangement when the accident occurred. Mrs. Thomas rented from the hotel company the two apartments together with the reception room between them for a total rental of $125 a month, Mrs. Thomas to have complete control and charge of the premises. In the process of administering the Turkish bath the bather was first taken into the steam room and from there into the massage room. In the massage room she would be put in the electric cabinet, and then on the massage slab where a little soap and water were used to cleanse the person and keep the body moist for massaging. While doing her massage work on a patient, the masseur would place a towel or towels on the floor to stand on in order to avoid slipping on the floor. The attendants would sweep the floor and rinse it after each person's massage. Sometimes they would use the hose and sometimes a bucket of water for this purpose. Then they would sweep the floor to get the water into the drain pipe, and go over the floor with a mop. In the evenings when they got through they would take a brush with powder and scrub the floor so that it would not

be slippery the next day. That is done two or three times a day in any Turkish bath. Plaintiff on the occasion in question was taken from the steam room first to the electric cabinet, then to the slab, where she was massaged, then to the shower, then to the door leading through a hallway to the resting room. In attempting to step from the floor of the massage room into the hallway, her foot slipped, causing her to fall, whereby she received the injuries for which she sues.

Mrs. Thomas testified: "The condition of the floor would cause the seep water to drain towards the corner, and we would have to sweep it from that corner back up to the drain pipe to get it in there. The water would not flow into the drain pipe unless it was swept in there. The massage room was constructed according to the best method that I know of except that the floor was not sloping just the least bit. In any other bathhouse I ever worked in the tile floors would slope just the least bit to where the drains were, but this floor did not. When massaging patients we do not soap them any more than we use the soap to cleanse the pores of the skin well while we are massaging the body. We don't spray them. We just sprinkle a little water on them to keep the body moist. Of course, there will be some of that water drip off from the body onto the slab, and off the slab to the floor. When we get through with that most of the soap is washed off in the shower. The water sprinkled on the patient gets on the slab first and then drips on the floor. The water drips off onto the floor and runs to the door because that is the lowest. The water that drips off the slab onto the floor is not such a large quantity, but it is enough to keep the floors wet and slippery. You could not operate any Turkish bath without soap and water on the floor, because it is impossible. When the patient is getting a shower the little shower room would be full of soap and water, and the patient might fall in there just as easily as anywhere else. After the shower, of course, the patient is wet. The patient then steps out on this floor and moves over to the door. She moves out there until we dry her off. We dry the patients off right by the door. The patient walks from the shower wet and we dry her off there by the door, and the last thing we dry is her feet, and then she steps over the sill into this hallway. That also has a tile floor. There was a bath mat on that floor by the door. The people walking around in the massage room with their wet feet would, of course, wet the floor. The patients and attendants walking around on this floor would naturally keep it wet and damp. In a properly constructed massage room the floor should slope just a least bit to the drain pipe, and that least bit is about one-eighth of an inch. It would be improper to make a tile floor that had any appreciable slope, the slope, if at all, must be very

slight. In any Turkish massage room such as this, properly constructed with a slight slope in the floor toward the drain, they do not have to sweep the water after each bath to keep the room in fairly decent condition. You can take the hose and wash the soapy water up. It will run right in the drain. This way you could not do that. We had to sweep it up. It was impossible to get it in the drain without sweeping. If you had the slight slope in the floor toward the drain you would not have to go over the floor with a mop. The center of the floor where the drain pipe was located was just a shade higher than the outer edge.''

Plaintiff testified that the mouth of the drain in the center of the massage room was ''up a little bit;'' that the slope of the floor from the drain pipe was ''just a little down towards the door;'' that the floor at the door where she fell was ''just wet;'' that the floor was slippery ''because any tile is slippery that has been wet with soapy water;'' that there was soapy water on the floor at the time; that she slipped because the floor at the doorway was ''soapy wet;'' that the water would not go into the drain because ''that part was just a tiny little bit lower,'' and the water ''seeped down towards the door;'' that she would say that the floor sloped from the drain towards the door ''a little bit.''

There was a metal covering, probably brass, over the mouth of the drain, in which covering there were slots to admit the water. It appears from photographs in evidence that this metal covering is flush with, or slightly lower than, the surface of the floor.

The door where plaintiff fell was the entrance to, as well as the exit from, the massage room. There was a hallway leading to this door through which the bathers passed in entering and leaving the massage room.

There are cases in other jurisdictions announcing the rule, upon which appellant relies, that where premises are let for a public or semi-public purpose, and at the time of the letting a nuisance, known to the landlord, or with the exercise of due care on his part ought to have been known to him, exists on the demised premises, by reason of the defective construction of a building or other structure thereon, he will be liable for injuries sustained by an invitee of the tenant, who enters the premises as a member of the general public, resulting from the dangerous condition thus created. So, too, it is held that he is liable for such injuries where the use for which the premises are let will necessarily result in a nuisance. The rule has been applied to parks, theatres, dance halls, and other places of amusement. It has been applied to a toboggan slide, a stand for reviewing a parade, to premises used by the order of the Elks at an annual meeting of the order, to a wharf at a pleasure resort, and to a boarding house.

[Barrett v. Lake Ontario Beach Imp. Co., 174 N. Y. 310; Francis v. Cockrell, L. R. 5, Q. B. 184, 501; Eckman v. Atlantic Lodge, 68 N. J. L. 10; Fox v. Buffalo Park, 57 N. E. 1109; Camp v. Wood, 76 N. Y. 92; Junkermann v. Jankelson, 213 N. Y. 404; Lust v. Peck, 116 N. Y. S. 1051; Larson v. Calder's Park Co., 54 Utah, 325; Albert v. State, 66 Md. 325; Tulsa Entertainment Co. v. Greenlees, 85 Okla. 113; Southwestern Gas & Electric Co. v. Thomas, 249 Fed. 325; Campbell v. Portland Sugar Co., 62 Me. 552; Folkmann v. Lauer, 244 Pa. 605.]

We are not persuaded, however, that plaintiff here has brought her case within this rule. The massage room, in the condition it was in at the time of the letting, could not by any just process of ratiocination be found to be such that the use for which it was let, would necessarily result in a nuisance. [Eyre v. Jordan, 111 Mo. 424, 19 S. W. 1095; Meade v. Montrose, 173 Mo. App. 722, 160 S. W. 11; Ten Broeck v. Wells, Fargo & Co., 47 Fed. 690; Hutchinson v. Cummings, 156 Mass. 329; Dyer v. Robinson, 110 Fed. 99; Burdick v. Cheadle, 26 Ohio St. 393; Beaman v. Grooms, 138 Tenn. 320; Turner v. Ragan (Mo.), 229 S. W. 809; Abbott v. Alabama Power Co., 214 Ala. 281; Jackson v. Public Service Co. (N. H.), 163 Atl. 504; Frear v. Manchester Traction, Light & Power Co. (N. H.), 139 Atl. 86; Henson v. Beckwith, 20 R. I. 165; Willcox v. Hines (Tenn.), 41 L. R. A. 279; Mellen v. Morrill, 126 Mass. 545; Harte v. Jones, 287 Pac. 37.]

In 22 A. L. R. 624, the reviewer states the rule as follows:

"It is generally recognized that the lessor of property *for public amusement purposes, at least as to latent defects,* owes to the public the duty of exercising ordinary care to provide against defects in the premises which render them unsafe for the use intended. This includes defects in construction, defects caused by the property being in a state of disrepair at the time of the lease, or a condition which, in the nature of things, must ultimately result in the property being dangerous when put to the use intended." (Emphasis ours.)

But in L. R. A. 1916F, 1124, the reviewer uses this language:

"By the great weight of authority the mere fact that premises are leased for some commercial purpose does not impose upon the lessor the duty of making the same safe for such members of the public as are induced to come thereon by reason of the nature of the business carried on therein, where the possession of the premises, including the approaches, is in the lessee."

Our Supreme Court appears to have adopted this view. [Bender v. Weber, 250 Mo. 551, 157 S. W. 570.] So, it seems, has the Kansas City Court of Appeals. [Meade v. Montrose, 173 Mo. App. 722, 160

S. W. 11.] We think a Turkish bath comes within this classification. It is obvious that it may not be classified as a place of amusement.

It is not contended that the defect in the floor of the massage room complained of here was a latent defect. It is conceded that the defect was obvious and known to the tenant as well as to the landlord.

There are cases involving lettings for public purposes wherein the liability of the landlord is based on his agreement to repair, but such cases are found in jurisdictions where the same rule is applied to lettings for private purposes, whereas the law is well settled in this State that an action in tort will not lie against a landlord upon his agreement to repair. [Glenn v. Hill, 210 Mo. 291, 109 S. W. 27; Kohnle v. Paxton, 268 Mo. 463, 188 S. W. 155; Turner v. Ragan (Mo.), 229 S. W. 809; Degnan v. Doty (Mo.), 246 S. W. 922; Murphy v. Dee, 190 Mo. App. 83, 175 S. W. 287; Shaw v. Butterworth (Mo.)', 38 S. W. (2d) 57; Peterson v. Smart, 70 Mo. 34.]

It is also well settled in this State, at least in cases of lettings for private purposes, that the landlord is not liable to the tenant or his invitee unless there be some latent defect of which the landlord knew, or ought to have known, but conceals. [Turner v. Ragan, supra.] There are many cases in other jurisdictions applying the same rule to lettings for public purposes. In such cases the courts in argument say there is no distinction in principle, as a basis for liability to the tenant's invitee, between a letting for private purposes and a letting for public purposes, since in each case the relation between the tenant and his invitee is precisely the same. Whether there be one invitee or many, each goes upon the premises, not as a member of the public, as a passerby goes upon a public street or sidewalk, but as an invitee, that is, at the invitation of the tenant, and by his permission, and subject to such guidance and restraints as he may see fit to give or impose.

It should be observed in passing that plaintiff pleaded and proved the relation of landlord and tenant, and bases his right of recovery upon that relation. The evidence shows an actual bona fide contract of tenancy; and there is no suggestion in the record that the contract was merely a sham lease designed or intended to protect the landlord from liability.

We conclude that the instruction in the nature of a demurrer to the evidence was rightly given.

The commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hostetter, P. J.*, and *Becker* and *McCullen, JJ.*, concur.