## Meil et ux. v. Korn

*Carlon M. O'Malley* and *Irving L. Epstein*, for plaintiffs.

*Frank M. Walsh*, for original defendant.

*Stanley F. Coar*, for additional defendant.

EAGEN, J., January 12, 1945.—In this action the husband plaintiff and his wife seek damages to com-

pensate them for injuries alleged to have been sustained by the wife when she slipped and fell at the entrance to a store owned and operated by the original defendant. The latter filed a complaint naming the additional defendant as a party to the action, to which the additional defendant filed an affidavit of defense raising questions of law, stating substantially that against said defendant no cause of action is pleaded.

In the statement of claim it is alleged that on the date of the accident and for a long time prior thereto, defendant maintained a wooden ramp leading from the sidewalk to the floor level of the store and that said ramp "was negligently, dangerously and improperly designed, constructed and maintained and ill adapted for proper use thereof, in that said flooring of said ramp was smooth, worn and slippery, more particularly so when rain water, ice or slush accumulated thereon". It is further alleged that on the day involved the smooth and worn ramp was slippery and dangerous due to rain water freezing thereon which caused the wife plaintiff to fall. In the complaint filed by the original defendant it is alleged that the building is owned by the additional defendant and that the latter leased this store to the original defendant nearly three years before the happening of the accident. It is further alleged that the ramp in question was in the same condition on the date of the accident as it was when the aforesaid tenancy was created.

The question thus raised for decision is clearly framed in the additional defendant counsel's excellent brief, namely:

"Is a lessor of land liable for bodily harm caused to his lessee, or others upon the land with the consent of the lessee or sublessee, by any dangerous condition, whether natural or artificial, which existed when the lessee took possession?"

An examination of the pleading leads to the conclusion that the negligence charged is based not upon the

construction of the ramp itself but rather upon the character of the maintenance thereof. The question, as we see it, is whether or not the ramp was kept in a safe or an unsafe condition caused by ice forming thereon. With this the landlord would clearly not be concerned and no liability could be asserted as to it on this ground. However, it is argued that plaintiff's claim is based upon the character of the construction of the ramp and an alleged defect in existence at the time of the execution of the lease and we shall, therefore, dispose of the landlord's liability under such circumstances herein.

The A. L. I Restatement of Torts, vol. 2, §356, p. 967, states the rule to be as follows:

"Except as stated in §357 to 362, a lessor of land is not liable for bodily harm caused to his lessee or others upon the land with the consent of the lessee or sub-lessee by any dangerous condition whether natural or artificial which existed when the lessee took possession."

A study of the sections of the Restatement involved discloses that section 357 concerns the case where there is an agreement upon the part of the landlord to repair; section 358 imposes liability where the landlord conceals or fails to disclose the existence of known hidden dangers; section 359 involves land leased for the purpose of the admission of a large number of persons or patrons, such as an amusement hall or theater; section 360 involves the situation where a part of the land is leased and the control of a portion thereof is retained by the landlord but use by the tenant is allowed; section 361 involves the situation wherein control of a part of the land leased is necessary to the safe use of the part leased; and finally section 362 deals with the liability of the landlord where he negligently makes repairs to the leased premises. Assuming that the negligence is based upon faulty construction of the ramp, we are definitely of the opinion that the pres-

ent case does not come within any of the exceptions to the general rule outlined above, and that under the facts pleaded the landlord is not liable.

There was no agreement to repair in this case. There are no known hidden dangers involved. The landlord did not make any necessary repairs and do so negligently. The tenant had full control of the entire premises. The case does not come within the exception imposing liability where the landlord knows or should know of a dangerous condition and leases the premises for a purpose involving the admission of a large number of persons. This is ruled upon in Hayden et ux. v. Second National Bank of Allentown, 331 Pa. 29, wherein it was held that a public garage is not within the purview of the above exception and the type of building contemplated is limited to a theater, auditorium, grandstand, stadium and the like. The liability in these cases is based upon the theory that the landlord allows the continuance of a nuisance upon a public highway or public place. See also Bender v. Weber et ux., 157 S. W. 570, wherein the Supreme Court of Missouri held that the lease of premises for a grocery store did not come within the "public use" exception to the landlord's nonliability. To the same effect see Clark v. Chase Hotel Co., 230 Mo. App. 739, 74 S. W. (2) 498.

We have read many available decisions of our appellate courts and find none imposing liability upon the landlord under circumstances similar to those in this case. The original defendant's counsel cites the statement of the court in Levin et al. v. Philadelphia, 277 Pa. 560, 565, namely:

"On the other hand, the rule is equally well settled that so far as third persons are concerned the landlord is liable for defects existing at the time of executing the lease", to support his argument that under the facts pleaded the landlord is liable. In that case recovery was denied on another ground. A study of the many cases involving landlord's liability definitely establishes that

the rule of liability is not as general as the language indicates.

In Mitchell et ux. v. George A. Sinn, Inc., 308 Pa. 1, the Supreme Court held (p. 4) :

"As a general rule, occupiers of premises and not landlords out of possession are liable for injuries occuring to third persons coming on the premises. . . . The liability of a landlord to third persons, arises only when he has (1) contracted to repair, or (2) let the premises in a ruinous condition, or (3) expressly licensed the tenant to do acts amounting to a nuisance . . ."

In Harte v. Jones, 287 Pa. 37, 39, it was held: "At common law, subject to certain exceptions, the occupier or tenant and not the landlord was liable for injuries occurring to a third person on or off the premises . . . The exceptions to this rule are where the landlord contracts to repair or has let the premises in a ruinous condition, or has licensed the tenant to do acts amounting to a nuisance . . . The landlord is also liable if the premises are dangerously constructed or a nuisance per se." See also the very learned discussion of the subject in Harris et ux. v. Lewistown Trust Co. et al., 326 Pa. 145.

As we see it, the only possible theory of the landlord's liability herein is asserted upon an argument that the property was leased in "a condition amounting to a nuisance" or that it was dangerously constructed, neither of which can be sustained. As pointed out in Harris et ux. v. Lewistown Trust Co., supra, p. 153, the nuisance doctrine "is confined to third persons or strangers to the premises, those 'either the owners or occupants of near-by property, persons temporarily on such property, or persons on a neighboring highway or other public places': 1 Tiffany, supra, 674; 16 R. C. L. (1917), pp. 1074 to 1076. The word 'nuisance,' as used in the law, implies the transmission of the effects beyond the boundaries of the land upon which the objectionable condition exists. As Chief Justice Gibson said in Knight v. Albert, 6 Pa. 472, 'A man must use

his property so as not to incommode his neighbor; but the maxim [*sic utere tuo ut alienum non laedas*] extends only to neighbors who do not interfere with it or *enter upon it.*' " See also Burdick v. Cheadle et al., 26 Ohio 393, wherein the problem is discussed.

The only remaining question is whether or not the premises were dangerously constructed. Under the facts and the decisions cited in this opinion the negative conclusion is inevitable.

Wherefore, January 12, 1945, the questions of law raised in the affidavit of defense are decided in favor of the additional defendant and judgment is directed to be entered in favor of said additional defendant, Abington Dairy Company.