LAURA BENDER v. GEORGE WEBER and ELIZA WEBER, Appellants.

Division One, May 31, 1913.

1. **NEGLIGENCE: Contributory: Not for Consideration.** Where defendants breached no duty they owed plaintiff, the question of whether her injuries were due to her own negligence is put aside.

2. ——: **General Principles: Private and Public Ways.** Announcements of courts on one state of facts are not to be applied automatically to another state of facts; but the general language of decisions must be read in the dry light of the

very case held in judgment, and not otherwise. The principles announced in cases where traps are laid or dangerous openings are left so close to the line of travel in a public highway that travelers thereon are likely to stumble into them, are not to be applied in a case where plaintiff, while attempting to pass through a private inclosed courtyard at the rear of defendants' houses, constructed for the accommodation of their tenants, fell into a cellarway and was injured.

3. ————: **Liability of Landlord: Courtyard Reserved: Injury Therein.** Where the owner of premises lets them to different tenants and there is a private courtyard in the rear of all of them, reserved by the landlord and kept under his control for the accommodation and convenience of the tenants and their customers, the landlord is liable to a customer of one of them for a negligent maintenance of the way, if the customer is injured in the part of the courtyard so reserved, but is not liable if the injury occurred in a part not so reserved.

4. ————: ————: **Invitees of Tenant: Injury on Premises Under Tenant's Control.** An invitee or customer of a tenant stands in the shoes of the tenant and has no greater rights against the landlord for personal injuries than the tenant has. If the injury to the tenant's invitee occurred in that part of a private way under the tenant's control, and not under the landlord's control, the landlord is not liable.

5. ————: ————: ————: **Falling Into Cellarway.** There was a private inclosed courtyard or passageway in the rear of the buildings owned by defendants, paved and constructed for the accommodation of grocerymen, milkmen, breadmen, etc. One of the buildings was leased to a grocer, and just at its rear door was a cellarway leading into a basement used in connection with the store. The steps were perpendicular with the wall of the building, and along the other side of the cellarway and along the end furthest from the door, was a banister or railing, but the end next to the door, at the head of the steps, was left open. The upper step began about nine inches from the door jamb, and was about two inches lower than the door step. Plaintiff, a servant of an adjoining tenant, came to the rear door to purchase groceries, and in backing out of the door fell down the steps and was injured. *Held*, that the steps or cellarway were under the exclusive control of the tenant of the store, and the injury did not occur in that part of the courtyard reserved by the landlords and under their control, and therefore they are not liable for plaintiff's injuries.

6. ————: ————: **Injury to Licensee.** Absent some form of active mischief on the landlord's part, he is not liable for injuries to his mere licensee.

Appeal from St. Louis City Circuit Court.—*Hon. Charles C. Allen,* Judge.

REVERSED.

*Claud D. Hall* for appellants.

(1) The court erred in refusing the instructions offered by defendants in the nature of a demurrer to the evidence at the close of plaintiff's case and at the close of the whole case. Buesching v. Gas Light Co., 6 Mo. App. 85; Larkin v. O'Neil, 119 N. Y. 221; Kean v. Schoening, 103 Mo. App. 77. (2) The court erred in permitting the plaintiff to introduce evidence to the effect that children played in the alleyway. Fitzgerald v. Paper Co., 155 Mass. 155. (3) The court erred in refusing to permit witness Gaborino to state whether there was anything peculiar about the construction of the alleyway and cellarway. Cobb v. Railroad, 149 Mo. 609; Beard v. Car Co., 72 Mo. App. 591; Woerheide v. Car Co., 32 Mo. App. 369; Goins v. Railroad, 47 Mo. 181. (4) There was no evidence that the defendants exercised exclusive control over the paved alleyway, or of the ingress or egress to these buildings, or that the public were authorized to use the alleyway or the rear door of the grocery. Shearman and Redfield on Negligence, sec. 503; Leonard v. Stores, 115 Mass. 89; Mellen v. Morrill, 126 Mass. 545. There was no evidence that these defendants had knowledge that the public used the alleyway or the rear door of the grocery, or that they licensed or invited the public or this plaintiff to use this alleyway or the rear door of this grocery store. (5) The petition does not show any relation of any character, existing at the time of the accident, between the plaintiff and defendants which imposed any duty or obligation upon the defendants toward plaintiff. Southcate v. Stanley, 1 Hurl. & N. 246; Gautret v. Egerton, 2 L. R. C. P. 370; Bolch v. Smith, 7 Hurl. & N. 738;

Hounsel v. Smyth, 97 Eng. C. L. 729; Glaser v. Roth-
child, 106 Mo. App. 418; Sweeny v. Railroad, 10 Al-
len (Mass.), 372; Barry v. Cemetery Association, 106
Mo. App. 358; Stevens v. Nichols, 155 Mass. 472; Ster-
ger v. Van Sicklin, 132 N. Y. 499; Winkler v. Railroad,
169 Mo. 592; Davis v. Congregational Society, 129
Mass. 370; Nicholson v. Railroad, 41 N. Y. 529. The
petition does not allege that the rear door of the gro-
cery was used by the public entering and leaving the
store, with the knowledge of the defendants. Mc-
Carthy v. Foster, 156 Mass. 511; Whitley v. McLaugh-
lin, 183 Mo. 160. It was not negligence to fail to put
a gate on the cellar stairway. Buesching v. Gas Light
Co., 6 Mo. App. 85.

*John T. Talty* and *E. V. Selleck* for respondent.

(1) When a defect exists in a way or walk lead-
ing to several tenements leased to different tenants,
and used in common by the tenants, and also by the
public, the landlord is liable for injuries sustained
in using the same. 1 Taylor on Landlord & Tenant
(9 Ed.), p. 221; Carson v. Quinn, 127 Mo. App. 525;
Poor v. Sear, 154 Mass. 539; Center v. Treadwell, 39
Ga. 210; Milford v. Holbrook, 9 Allen, 17; Buesching
v. Gas Light Co., 73 Mo. 219; Redman v. Conway, 126
Mass. 251; Dallard v. Roberts, 130 N. Y. 273; Sawyer
v. McGillicuddy, 81 Me. 322. (2) Respondent in prov-
ing the averments of her petition, that the way or walk
was used in common by appellants' tenants, and also
the public, was entitled to show that children as well
as adults used it. (3) The petition contains every
averment necessary in stating a cause of action of this
character, and is well and carefully drawn and in no
way susceptible to criticism even.

LAMM, J.—Negligence. Personal injuries. Ver-
dict and judgment for plaintiff for $1250. Appeal
to the St. Louis Court of Appeals. Affirmed there by

a divided court. Certified here under section 6 of the 1884-Amendment of the Constitution.

The pleadings fill no office for present purposes.

The case on the facts is this: There are two streets in St. Louis (Cardinal and Laclede) cutting each other at right angles. In one of such angles there is a group of buildings owned by defendants, husband and wife. The ground floors and basements of some are leased for business purposes, while the upper floors of those and the whole of the other buildings are flats or dwellings occupied by tenants for living purposes. There is a paved private courtyard or passageway for footmen only (somewhat like a *patio*) for access to the rear of all. For convenience of expression, we will call it the "courtyard," *passim.* To fill its office suitably (which office was that of giving access by way of common use to tenants and those other persons having a right to go to the rears of the group of buildings—e. g.; grocerymen, meat marketmen, milkmen, breadmen on their delivery rounds) said courtyard runs east and west and then turns north, taking the form of an "L." As said, this courtyard is private property, belongs to defendants, being cut off by lattice screens from both Cardinal and Laclede, with latched doors in the screens for ingress to and egress from the courtyard. It is not connected with any public alley. As said, defendants' tenants made common use of this courtyard when occasion called, this in addition to the use mentioned above. A minor or sporadic use also grew up, incident to the Woods tenement, which will be recurred to further on. At a certain place in this courtyard, the *locus in quo,* it is eight feet six inches wide from wall to wall, i. e., from north to south. The width is less at some other places. Ranged along the sides of this courtyard are breadboxes, gasoline tanks, ash bins (the latter possibly permanent) for the convenience of tenants—we suppose, put there by them. There are also some cel-

larways running east and west lengthwise with the courtyard, and hard by the rear building walls, which cellarways lead to the basement cellars of those buildings having such cellars. These cellarways make openings, say, eight feet long and two feet three inches wide severally. They have no trap doors on top, but are cut off and guarded from the courtyard by wooden railings or banisters at one end and along one side (the other side being protected by the building wall) and one end was left open at the head of the cellar stairway, the latter leading down, say, eight feet, to the outside cellar door to the basement proper. The upper step of each of these cellar stairs is flush with the paved courtyard; and these stairways were built and arranged, as above described, some years gone, to-wit, at the time the group of buildings were constructed by their former owner in accordance with an architect's design.

At the times in hand the ground floor of one of these buildings was in the possession of two brothers, named Wood, as tenants of defendants, the Woods running a grocery there. The cellar under that ground floor was leased with the ground floor itself to them for that purpose, including the right to the use of the stairway leading thereto. In this cellar the Woods stored and kept goods, boxes, etc., and their necessary outside access to this cellar was, as suggested above, by one of the described cellar stairs, opening into the courtyard, and subjected to this private and exclusive use every day about their business.

There was a rear door to Woods's grocery opening on the courtyard. The upper step of the cellar stairway in question (said step being at a right angle to the building) began nine inches or so west of the west jamb of this rear door, and the door sill of that door was about two inches above the level of the courtyard pavement. We take it from the record, including photographs in evidence, that the ordinary line of

travel east and west in this courtyard (that is, the customary use) was on about six feet of clear space of pavement, to-wit, the whole courtyard, saving and except the space taken up next to the rear building walls by ash bins, breadboxes, oil tanks, cellarways, etc. It will thus be seen that to fall into this cellar way anyone leaving this rear door would have to turn to the west, directly on stepping out, and in the line of the obstructions on that side, instead of taking pains to go north far enough to get outside the line of said obstructions and into the clear space or line of travel of the courtyard east and west.

In this condition of things, and not otherwise, on a Sunday evening, October 28, 1905, plaintiff (an intelligent housemaid thirty-three years of age, with good eyes) entered this courtyard from Cardinal on an errand for her mistress, a Mrs. Conley, to get from Woods's grocery some oysters and milk for lunch. Mrs. Conley was one of defendants' tenants, and the rear of her tenement, with windows therein, was on this courtyard and but a few feet away from Woods's rear door and in plain view of said door and cellarway from said windows.

Lying right under her eye, plaintiff could see and did see this cellarway from the Conley tenement windows, as said. Moreover, she had been in and out the grocery through this rear door. She admits she knew all the time she lived with Mrs. Conley that this cellarway was open at one end, the end next to Woods's rear door, but she says she did not know how close on the west its upper step was from the door sill of this rear door. All the testimony is to the effect that it was not dark but it was "just getting dusk." We take it the light was such that plaintiff could have seen everything there was to see if she had looked at the immediate time. She says she saw at the very time the banisters of the cellarway and saw the opening at one end where the steps begin "but did not

know it was so close.'' Her story is that coming with a bucket in hand to the rear door she took hold of the door knob, turned it and walked in; that she found there the proprietors and some others and ''started'' to buy what she went for. At that instant, and before trying to buy anything, she remembered ''something'' and wanted to speak to her mistress about it. So, after saying ''good-evening'' to the persons in the store, she faced about and stepped, face to the front, straight north out of the door, ''just stepped in and stepped out,'' and as soon as she got out, when her hand was yet on the door knob, she fell (evidently having stepped to the west or westwardly along the building wall) through the open end of the cellarway, headlong down to the foot of the cellar stairs and thereby badly hurt herself.

That she did injure herself is conceded, indeed no question is made over the extent of her severe injuries.

Defendants introduced testimony from several witnesses, of great probative force, to the effect that plaintiff near dusk came with a bucket to the locked rear door of the grocery; that on knocking the door was opened; that several parties in the rear room of the grocery were smoking and drinking beer, ''socially;'' that plaintiff, herself intoxicated, stood in the doorway and asked for beer; that she said nothing about buying groceries; that, being refused beer, she, with her face to the south, i. e., away from the courtyard, backed out of the door laughing and talking and in so doing backed northwest into the cellarway.

The grocery had the usual front door and it was open at the time. There was no testimony that the rear door was intended by the owners of the building as a means of access to the storeroom by customers of the tenant occupying the ground floor, or was built for any purpose outside of the ordinary use such a rear door is put to for the backdoor convenience of the tenant. Neither is there any evidence showing or

tending to show that defendants, the landlords, knew that their tenants, the Woods, permitted or solicited the use of this rear door by their customers in coming in or going out of the store. It stands conceded that no other rear door leading into this courtyard from any of defendants' other tenements was so used. Defendants did not live on the premises, but some distance away, and collected their rents through an agent. It seems the Woods kept their grocery store open during part of each Sunday for the sale of groceries, and, as said, the front door was open at the time. Furthermore, it appears that Mrs. Conley was a customer of the Woods and that she and her housemaid used the courtyard as a near way or shortcut to the grocery through this rear door. Plaintiff had worked for Mrs. Conley for about two weeks, though she had been familiar with the courtyard for a much longer time, and testified that she saw "people going in and getting groceries" through this rear door. There was testimony that other tenants of defendants at times made the same use of it, and sometimes outsiders, but the extent of this latter use is not disclosed. It was also shown that at times "people" were seen going through this courtyard and that children sometimes played there. It was testified to by Mrs. Conley on behalf of plaintiff, and denied by Mr. Weber, that prior to the accident she had notified him to close up the open end of the Woods's cellarway and gave as a reason that it was dangerous to her children. There was uncontradicted testimony on behalf of defendants that the customary way of building in St. Louis is to leave cellarways, intended for uses such as this, in the rear of premises on private grounds, like this, open at one end. That "the general practice is to inclose all but one side—that is, where you go down the steps." As already pointed out, there was no testimony that anyone besides the Woods had any right to use the cellar-

way or that its use was common to other tenants of defendants or to any part of the public at large.

Questions on the admissibility of testimony were ruled against appellants. So, a ruling was made on objections to an alleged improper argument by one of respondent's counsel to the jury. Error is assigned in both particulars. Others relate to giving and refusing instructions—one a demurrer to the evidence hinging, in part, on the question whether respondent was not guilty of contributory negligence as a matter of law, and, in part, on another question presently stated. So, while the sufficiency of the petition was not challenged below, it is argued here it does not state facts sufficient to constitute a cause of action.

The record relating to the enumerated list of assignments needs no attention until such time as a main question raised by appellants (and hinted at above) is settled, to-wit:

Did they, as landlords, breach any duty they owed plaintiff by not fencing off the entrance of their tenants' courtyard cellarway, and hence, should not the demurrer to the evidence have been given

If that question be ruled against appellants, other assignments will be reached in due order and, in that event, any record pertinent thereto, if not already set forth, will appear in connection with a determination of those points. But, *contra,* if that question be ruled for appellants then the case fatally breaks at that point and the other assignments will be reserved as not necessary for decision and to be ruled in some other case turning on them.

I. In determining that question it is better to clear the way by first defining it by eliminating or canceling out certain propositions and factors discussed in briefs and in authorities cited on both sides, and finally, as in par-

Contributory Negligence.

agraph *e, infra,* differentiating and distinguishing our case from another closely allied to it.

(a)  In the first place, and obviously, the question up is badly disconnected in nature and principle from another looming large on this record, to-wit, that of plaintiff's alleged contributory negligence. Hence the knowledge of plaintiff of the existence of the open stairway and its location, her possession of good eyes, the state of the light at the time of the accident and whether she was intoxicated, or whether she went face forward (as she says) or walked backward (as defendants say) into the cellarway, not being elements of any deciding value, are put away from us and laid on the shelf.

(b)  In the next place, a good rule, of every day service, is that judgments of appellate courts on one state of facts may not be applied automatically to another state of facts, but, *contra,* the general language in decisions must be read in the dry light of the very case held in judgment, and not otherwise. [State ex rel. v. St. Louis, 241 Mo. l. c. 238 et seq.] Therefore it will not do to indiscriminatingly invoke the principles and doctrines announced in cases where traps are laid or dangerous openings are left so close to the line of travel in a public highway that travelers thereon are likely to stumble into them whether in day time or night time, or where under circumstances of danger and surprise they suffer injuries from the proximity of such unguarded excavations or pits to public highways. This because: The courtyard was in no just sense a public highway but was private inclosed ground devoted to the convenience of defendants' tenants and tenements and no express or implied invitation was extended to the general public to use it as a highway. The doctrine and reasoning of such cases, then, as Smith v. St. Joseph, 45 Mo. 449;

*Principles Relate to Concrete Facts.*

250 Mo.—36

Bassett v. St. Joseph, 53 Mo. 290; Buesching v. Gas Light Co., 73 Mo. 219; Fehlhauer v. St. Louis, 178 Mo. 635; Benton v. St. Louis, 248 Mo. 98; Dalay v. Savage, 145 Mass. 38; Babbage v. Powers, 130 N. Y. 281 (some of which are cited and relied on by counsel), furnish little or no aid in this case. In so far as those cases, or any of them, discuss and announce the joint duty of owners and tenants, or the separate duty of either of them or of municipalities to persons traveling on public highways, they are not at first blush, or at bottom, applicable to the instant case on the question up.

(c) In the next place, there is a doctrine of the law, hinging on the express terms of leases, whereby the duty to make repair or keep tenements fit is taken from the shoulders of the tenant or occu-
Liability of Landlord. pier (where it generally belongs, Ward v. Fagin, 101 Mo. 669) and is put upon those of the landlord, and wherein the breach of. that duty has been sometimes (but not always) allowed some significance as *lex privata* in determining the liability of the landlord to the tenant or his guests or customers for injuries. This is so because:

In this case the terms of the lease between defendants and the Woods are not before us. Nor does the petition count on a breach of any contractual duty springing from the verbiage or provisions of the lease itself. Therefore that doctrine and cases discussing it are afield.

(d) So, there are other doctrines of the law regulating rights and duties between landlords and tenants or between them (or either of them) and other persons, arising where tenements are let for an expressed purpose set forth in the lease, or
Warranties in Lease. are warranted as fit for such purpose, or where the landlord conceals from the tenant dangerous defects or noxious hidden conditions known to him but unknown to the tenant, or where premises are let with an existing and present nuisance

thereon, affecting the public.   Cases dealing with one
or another phase of those doctrines—e. g., Riley v.
Pettis County, 96 Mo. 318; Whiteley v. McLaughlin,
183 Mo. 160; Baker v. Tibbetts, 162 Mass. 468; Bowe
v. Hunking, 135 Mass. 380; Edwards v. Railroad, 98
N. Y. 245; State to use v. Boyce, 73 Md. 469; Buesch-
ing v. Gas Light Co., 73 Mo. l. c. 227—are not in point
on this record.

(e)   So, there is a well established general doc-
trine that may be guardedly stated after this fashion:
It is the tenant, not landlord, who has surrendered
domination and control, who is liable for the
negligent maintenance of the premises.   But
where the owner of premises lets them to dif-
ferent tenants, and there is a stairway, hall, roof, way
or the like intended for and devoted to the common
use of all of them and their guests or customers, which
stairway, hall, way or roof is reserved from or not
included in the demises but is kept in the control of
the owner, then a liability of the owner may spring
(based on his negligent maintenance of the way, hall,
stairway or roof) to the tenant, his domestic, guest or
customer, lawfully and with due care using the way,
hall, stairway or roof for its intended purposes.   That
doctrine is quite universally announced in cases and
text-books, as will presently appear.   If, now, plain-
tiff was hurt in that *part* of the courtyard designed
for. and appropriated to the common use described
above, and which was not under lease but was reserved
and kept under the control of defendants as owners
(and such part surely existed under this record) we
would have one case here for determination.   If on the
other hand (as appears to be the case) she was not,
then we have another and different case here for de-
termination.   It is in the light of the premises, and
not otherwise, that the question in hand must be ruled.

*Reserved Way.* [margin note]

. II.   Coming to our question, as thus narrowed, we are of opinion it should be ruled for appellants. This because:

(a)   The record shows beyond all question that the outside stairway at the rear of the grocery passed to the Woods by their lease.   The owners reserved no control whatever over it.   So, the exclusive control of the access to this stairway from the courtyard or from the rear door of the grocery passed to them with their demise, together with the preclusive right to use that rear door and way of access.   These defendants had no right to intermeddle or interfere with that use or access and were not charged with any duty under the law to make that use safe to their tenants or such customers as were invited or permitted by them to make use of it in entering or leaving the store. The lessees took it as they found it, for better or worse.   As to the invitees of the tenants, they stood in the shoes of the tenants and had no greater rights against the owner.   "In such a case the guest can have no greater claim against the lessor than the lessee himself and the members of his family have."   [McKenzie v. Cheetham, 83 Me. l. c. 550.]

The doctrine of *caveat emptor* applied in such cases and if any third persons are injured in the use of it on their invitation or permission the tenants in control, and not owners out of control, are liable. Such injured parties must look to those who invited them, not to those who had no hand in doing so.

May A not rent to B a tenement in a known tumbled-down condition without being liable to B's invitees?   Withal if A is liable, as, for example, for the absence of a gate or bar where the upper tread of the cellar stairway began, how could he ever discharge or acquit himself of that liability?   Must he keep the gate shut or the bar up from day to day?   If he provide one and B is remiss in using it, what then?   It is plain that to rule as respondent wishes us to would be to let in

a flood of strange and deep water for the landlord to struggle with.  Fortunately it is not so written in the law.

As pointed out heretofore we are not dealing here with a condition dangerous to the general public which condition appertained to a use by the owner intended to be public (or which was necessary to the public), nor or we dealing with a public nuisance *per se*.....  Subject to limits suggested in this and the former. paragraph, the proposition announced seems good and acceptable doctrine.  [3 Shear. and Red. on. Neg. (6 Ed.), sec. 709, 709a, and especially 710; 1 Taylor on Land. and Ten. (9 Ed.), p. 221.]

The doctrine is exemplified in the cases.  Take one to illustrate:  In Sawyer v. McGillicuddy, 81 Me. l. c. 320-1, it is held as follows:

"The tenant for the time being is in the place of the owners, taking the property as he finds it.  These circumstances are so connected with the repairs, that the law deems it reasonable and proper that, in this respect as well as in others, the tenant should take the place of the owner and authorizes the inference that such was the intention of the parties, in the absence of controlling facts.  This would also be true of all appurtenances connected with, or ways to, the premises when such appurtenances and ways were included in the lease, with the same right of possession in the tenant as in the premises.  This rule is now beyond controversy."

Take another case, Mellen v. Morrill, 126 Mass. 545:

"It appears that the plaintiff was injured by falling down an embankment adjoining a walk leading from the street to the door of a building owned by the defendant but leased to a tenant.  The accident happened in the night time.  There was no defect in the walk itself.  It was rendered dangerous, if at all, by the want of a railing,  or by the absence of a light or

some other warning. The plaintiff can hold the defendant liable only upon the ground that he was guilty of negligence towards her.

"The occupier of a building, who negligently permits the building or the access to it to be in an unsafe condition, is liable for an injury occasioned thereby to a person whom he by an invitation, express or implied, induces to enter upon it. He is liable because it is negligence in him to invite a person to enter upon a dangerous place without proper warning. [Sweeny v. Old Colony Railroad, 10 Allen, 368; Carleton v. Franconia Iron and Steel Co., 99 Mass. 216.] But the defendant was not the occupier of the land, and did not, expressly or impliedly, invite the plaintiff to enter upon it. He had leased it to a tenant, and there is nothing to show that he retained any control over the walk, or any right to direct the purposes for which the premises should be used."

In short, the reason of the thing is that as to customers and invitees generally, the tenant, standing in the shoes of the owner, *pro hac vice* is the owner.

The student yearning to follow principles of law up to their ultimate sources and reasons in the exposition of philosophical jurists may on this score profitably consult Sheridan v. Krupp, 141 Pa. St. 564; Burdick v. Cheadle, 26 O. St. 393; McKenzie v. Cheetham, 83 Me. 543; Leonard v. Storer, 115 Mass. 86; McCarthy v. Foster, 156 Mass. 511; Marwedel v. Cook, 154 Mass. 235; Jennings v. Van Schaick, 108 N. Y. 530.

We will not swell this opinion by excerpts from those cases, but content ourselves with saying they, some in one and some in another phase, support the conclusions reached by us.

In so far as the question ruled has been before the appellate courts of this State in related or analogous features, we think nothing can be found militating against pronouncements herein made. [City of St. Louis v. Kaime, 2 Mo. App. 66; Vai v. Weld, 17

Mo. 232; Whiteley v. McLaughlin, 183 Mo. 160; Ploen v. Staff, 9 Mo. App. 309; Little v. Macadaras, 29 Mo. App. 332; Carson v. Quinn, 127 Mo. App. 525; Kean v. Schoening, 103 Mo. App. 77; O'Donnell v. Patton, 117 Mo. 13.]

(b) Again: Respondent, putting her very best foot foremost, an invitee as to the Woods, was a mere licensee as to appellants. In such case, absent some form of active mischief on appellants' part, as here, they are not liable for her injuries. [Kelley v. Benas, 217 Mo. l. c. 9; Glaser v. Rotchschild, 221 Mo. l. c. 185.]

**Licensee.**

We hold that, on the reasoning employed and conclusions set forth, appellants are not liable and the demurrer to the evidence should have been given. Whether there are other grounds for reversal we do not determine.

As there is nothing to indicate that respondent's case was not fully developed, another trial will serve no purpose of justice.

Let the judgment be reversed. It is so ordered. All concur.