229 S.W.2d 593 (1950)
GRIMMEISSEN
v.
WALGREEN DRUG STORES, Inc. et al.
No. 27860.
St. Louis Court of Appeals. Missouri.
April 18, 1950.
Motion for Rehearing or to Transfer to Denied May 26, 1950.
*594 F. X. Cleary, St. Louis, Julian C. Jaeckel, St. Louis, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellants.
Ninian M. Edwards, St. Louis, N. Murry Edwards, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Supreme Court Denied May 26, 1950.
ANDERSON, Presiding Judge.
This is an action to recover damages for personal injury brought by Lillian Grimmeissen, as plaintiff, against defendants Walgreen Drug Stores, Inc., and Joseph Fischmann and Blanche Fischmann, doing business as Metropolitan Building. The injury was sustained by plaintiff when she was struck by some material which fell from the ceiling in that portion of the Metropolitan Building in St. Louis occupied by a drug store operated by defendant Walgreen Drug Stores, Inc. Defendant Walgreen Drug Stores, Inc., occupied the premises as lessee of defendants Joseph Fischmann and Blanche Fischmann, owners of the Metropolitan Building. The trial resulted in a verdict and judgment in favor of plaintiff and defendant Walgreen Drug Stores, Inc., and against defendants Joseph Fischmann and Blanche Fischmann for the sum of $1,500. Defendants Joseph Fischmann and Blanche Fischmann have appealed from said judgment.
The petition alleged that on June 4, 1948, while plaintiff was eating lunch in the Walgreen store, "defendants carelessly and negligently, jointly and concurrently caused, suffered and permitted a large piece of plaster from the ceiling of said drug store and building to fall and strike the plaintiff on the head, neck, shoulder, left arm and left side, causing her to sustain injuries"; that she had "no knowledge nor any means of knowing the cause of the falling plaster and roof; that she had no knowledge of the management and operation of defendants' building or drug store; that the same was under the sole control, supervision and ownership of the defendants, as aforesaid; that plaintiff relied solely on the defendants for the proper maintenance and operation of aforesaid building and drug store."
The answer of defendants Fischmann admits being residents and citizens of the State of Missouri, but denies all other averments of the petition.
The answer of defendant Walgreen Drug Stores, Inc., admits its corporate capacity and that it owns and operates the drug store in question; but denies all other averments of the petition directed against it, and avers that if plaintiff had any right of action against it, such right was governed by the Missouri Workmen's Compensation Act.
The evidence shows that on June 4, 1948, defendants Joseph Fischmann and Blanche Fischmann were the owners of the Metropolitan Building situated on the northeast corner of Grand Boulevard and Olive Street in the City of St. Louis. Defendant Walgreen Drug Stores, Inc., occupies, as lessee, a portion of the first floor of the building where it operates a drug store. The lease, under which defendant Walgreen Drug Store, Inc., occupies the premises, was entered into on May 1, 1937, between that defendant and Lauren Realty Company, a prior owner of the building. The term of the lease was for twenty years. With respect to repairs, the lease provides:
"5. Tenant shall make incidental repairs to the interior of the leased premises, except as provided below. Landlord shall make all exterior and structural repairs, repairs required by causes not the fault of Tenant, or by fire, casualty or the elements; also repairs to sidewalks, supply pipes for gas, electricity and water leading thereto, and drainage pipes leading therefrom. Landlord shall keep basement free from water but shall not be liable for any penalty except upon failure to correct such condition within a reasonable time after notice. The provisions of this paragraph shall be complied with as required from time to time.

* * * * * *
"Landlord expressly covenants, represents and warrants that the structural condition and character of said building is such as to permit the doing of said work without collapse of any structural parts and without damage or injury to person or property provided that said work shall be carried on with due and reasonable care."
*595 Plaintiff was an employee of defendant Walgreen Drug Stores, Inc., from May 4, 1948, to June 4, 1948. Her duties were that of a saleslady at the cigar counter, and also cashier. On June 4, 1948, at about 2:00 p.m., she entered one of the booths in the store to eat lunch. Plaintiff testified: "I was sitting in my booth eating my sandwich when it was served to me by the waitress, and something struck me, I didn't know what it was. I was blacked out for the moment, I was dazed and stunned. * * * It struck my scalp first and went on down to my shoulder and then my left arm, * * * the left side of my scalp * * * right over the ear * * * I was stunned and dazed and I must have tried to get up out of the booth because I had a bruise on my left hip and I vaguely remember someone in the next booth saying that the ceiling had caved in on me."
Thereafter, according to plaintiff's testimony, a waitress came to her assistance and took her to the prescription counter and the store manager, Charles Heisler, assisted her to the office of Dr. Thomas St. John, whose office was on one of the upper floors of the building.
Mr. Heisler, called as a witness for plaintiff, testified that he was compounding a prescription when plaintiff was brought to him, and that she was bleeding from the head. He further stated he placed a towel around her head to prevent the blood from getting on her clothing.
Plaintiff, further testifying, stated: "I left the doctor and came downstairs with Mr. Heisler who stayed in the doctor's office with me all the time. I came through the store and he came down with me and he left me saying he was going over to inspect the ceiling. I went out the front door and went home."
Plaintiff further stated that she did not examine the ceiling immediately after her injury, "because I was too stunned and dazed, and blacked out. I didn't know what had happened, and I was rushed up to the doctor too suddenly to inspect it at the time. * * * I did on one of my visits back to the doctor, I looked at it * * * the distance from the floor to the ceiling is quite a few feet, about twenty feet, I imagine. * * * And you couldn't see very much from the floor to the ceiling * * * but the best thing I could say was that it was about eight inches square in the ceiling. How deep it was, I don't know." On cross-examination, plaintiff said: "Well, it was pretty deep, about three or four inches, maybe."
Plaintiff further testified that during the time she worked at the Walgreen store there was general construction work going on throughout the building, but she saw no construction work being done in the Walgreen drug store.
Charles Heisler testified that after he returned from the office of Dr. St. John he examined the material that had fallen from the ceiling. He stated: "It was actual concrete and the cinders and plaster * * * It was broken into about five distinct pieces." He further testified that the Walgreen company was not doing any remodeling work in the store at that time. He further testified:
"Q. Was any work being done by the building in the building itself that you noticed? A. They were going under, through a general remodeling. They were putting a new front, new lighting, new elevator doors, and what not. I mean it was general.
"Q. But Walgreen wasn't doing that? A. No. * * * I went to the second floor after she (plaintiff) was discharged and gone. I wanted to see if there was any pounding going on to be causing this to come down, if there was any chance of a recurrence of it. * * * I noticed tools, I didn't know what kind of tools they were, but at that time there were just tools laying everywhere in the building, and even right next to our entrance door areaway off the lobby, because they were using our store as an exit and entrance.
"Q. Did you see tools on the second floor, above the Walgreen Store? A. No, that wouldn't be over our store. * * * They were right off to the side, to the left of the elevator. * * * It wouldn't be over our store. * * * I wouldn't have known who they belonged to. * * * There was nothing going on in our store."
*596 Mr. Heisler further testified that he examined the ceiling on June 4, 1948, on his daily inspection of the store, and prior to the time plaintiff was injured, but did not see anything to indicate there was anything wrong with the ceiling.
John Wunderlich, a licensed architect, was called as a witness for defendants Joseph Fischmann and Blanche Fischmann. He testified that at the request of defendants he made an inspection of the hole in the ceiling; that the opening was the depth of the thickness of three coats of plaster that had been applied, about three-fourths of an inch; that the material which fell out consisted of plaster; that an inspection of the plans of the building disclosed it to be a fireproof structure of steel and concrete construction.
On cross-examination, Mr. Wunderlich testified he was standing on the floor, directly beneath the hole, when he made the inspection of the ceiling; that it was not necessary to use a ladder to make the inspection; that the fall of the plaster exposed the concrete of the ceiling, but no concrete fell; that the plaster had come loose from the concrete; that the hole, which was irregular in shape, was about eight inches in diameter; that he wouldn't say he could tell by looking at the hole what caused the plaster to fall, other than possibly due to the age of the building (the construction commenced in 1907) one might expect something like that to happen.
Appellants assign as error the refusal of the trial court to sustain their motion for a directed verdict for the reason that, under the facts disclosed by the record, appellants were under no duty to maintain the premises in a reasonably safe condition for use by invitees of its lessee, and consequently could not be held liable in damages for plaintiff's injuries.
Respondent contends that she made a case for the jury under the theory of res ipsa loquitor, and cites in support of this contention the case of Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S.W.2d 90, 138 A.L.R. 1065, and Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 52 S.W.2d 839.
In the Kelly case the plaintiff, who was lawfully upon the public sidewalk, was struck and injured by a piece of terra cotta which fell from a building wall adjacent to the sidewalk. Joined as defendants were the owner of the building and its lessee. The latter had exclusive possession of the building and, by the terms of the lease, expressly agreed to keep the premises in good order and repair, except as to roof, gutters and downspouts, which the lessor agreed to maintain. The lessor reserved the right to enter the premises for the purpose of examining the condition thereof and to make such repairs as it might see fit to make. The court held that a res ipsa case was made against the owner of the building. The court said: "Although, under the terms of the lease, the Hat Company had the exclusive right to occupy, use and control the building and leased premises to the extent of the rights therein granted, the Investment Company reserved the right to enter the premises for the purpose of examining the condition thereof and to make such repairs as it might see fit to make. The evidence, including the lease and pictures, was sufficient for the jury to find that the Investment Company owned the building and had leased it; that plaintiff, seated on a box on the sidewalk adjacent to said building, was injured when a piece of terra cotta fell and struck him; that only a part of the block fell; that a part of the break was fresh and a part of it was old and stained by weather; that part of the piece that fell had extended out from the face of the building wall, over the sidewalk, and a part had been set in the wall; and that the piece broke off and fell for no apparent or known cause. We think the doctrine of res ipsa loquitur applicable here and that these facts were sufficient from which the jury could infer and find negligent maintenance by defendant Investment Company and a breach of its duty to plaintiff; that the piece of terra cotta fell by reason of defective design, plan or construction of the building or the unsuitability of the materials; that plaintiff's injury resulted from the permanant condition of the building (not the use thereof by the tenant); and that the conditions causing the injury *597 existed at the time the building was leased to the Hat Company. If the jury found these facts, defendant Investment Company could not escape liability to plaintiff, even though the premises were in the exclusive possession of a tenant who had expressly agreed with the landlord to keep the premises in repair." Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 417, 418, 155 S.W.2d 90, 96, 138 A.L.R. 1065.
In the Walsh case, supra, plaintiff, a pedestrian on the public sidewalk, was struck and injured by glass from a plate glass window which fell upon her. The lessee of the office from which the glass fell and the owner of the building were both made defendants. The case was pleaded and submitted under the res ipsa loquitur doctrine against both defendants. The jury found for the tenant and against the owner of the building. The trial court sustained the owner's motion for new trial. On appeal, the owner contended that the trial court properly sustained this motion for the reason there was no substantial evidence to support a verdict against it, since the proof showed that plaintiff was injured by glass which fell from premises occupied by the tenant. It appears from the lease that the tenant was given exclusive possession of the premises, except the exterior portion of said premises and walls thereof. However, it was provided that all plate glass was at the risk of the tenant and, if broken, was to be replaced by and at the expense of the tenant. The duty to make repairs was, by the lease, placed on the tenant. Notwithstanding the meager measure of control left in the landlord, our Supreme Court held that recovery could be had against the owner of the building. The Court said: "In this case we think there is sufficient evidence to warrant a finding that the fall of this glass from the window in question was due to some defect in the construction of the window or fastening to the frame holding the same in place. * * * We need only to say at this time that, considering the extraordinary character of this accident and the restricted right of the realty company as tenant in the use of outer walls in making repairs, the evidence is sufficient to sustain the verdict against the telephone company." Walsh v. Southwestern Bell Telephone Co., 331 Mo. 118, 129, 131, 52 S.W.2d 839, 844, 845.
In both of the foregoing cases the plaintiffs were using the public sidewalk at the time of receiving their injuries. In such cases, a higher and different duty is imposed upon the owners of buildings than is exacted in cases such as the one at bar, where the injured person is an invitee within the premises. The substantive law applied in the cited cases is stated in an annotation in 7 A.L.R., page 210, as follows: "The owner of a completed building which adjoins a highway is liable to a person passing in the street who may be injured by the falling of any part of the structure, although the premises are in possession and under exclusive control of a tenant, if the building by reason of faulty and negligent construction, or the use of improper and unsuitable materials, or for any other reason is, when leased, in such condition that it is liable at any time to fall of its own weight. Such a condition constitutes a nuisance, and it is not material that the building was not constructed by the owner or that the tenant has obligated himself to repair. If the fall is caused by defects which arose after the owner parted with possession to the lessee, but which do not in themselves constitute a nuisance, but are due to culpable negligence, the owner, as well as the tenant, is liable to third persons injured thereby if he has obligated himself to repair."
According to plaintiff's own evidence, the premises where she received her injuries were occupied by the defendant Walgreen Drug Stores, Inc., under a written lease. This lease was between the Lauren Realty Company and Walgreen Drug Stores, Inc., and was executed in 1937. Appellants later became owners of the building and Walgreen Drug Stores, Inc., continued to occupy the premises under this lease. The lease provided that the tenant, Walgreen Drug Stores, Inc., should make the incidental repairs to the interior of the leased premises, and that the landlord should make all exterior and structural repairs, and repairs required by causes which were not the fault of the tenant, or those caused by fire casualty or the elements.
*598 Plaintiff was an employee and within the premises at the time she received her injury. The ceiling defect in question was a latent one. This appears from the testimony of Mr. Heisler who was a witness for the plaintiff. There is no evidence in the record as to how long this defect had existed, and a finding that it existed at the time the lease was executed could only be justified if the facts present a case for the application of the res ipsa loquitur doctrine.
There was no evidence in the record that appellants at any time had knowledge of the existence of this defect, and no basis exists for an inference of such knowledge, for the reason that it appears from plaintiff's own evidence that the defect was of such a character that knowledge of it could not be acquired. As heretofore stated, Heisler testified that his inspections prior to the time of the accident failed to disclose anything wrong with the ceiling.
At this point we deem it appropriate to review briefly certain principles of the law which define the duties a landlord owes to his tenant and others lawfully on the premises, and the facts necessary to be found in order to impose liability on him for personal injuries due to a violation of those duties.
Where exclusive possession rests in the tenant, the landlord is liable for injuries resulting from defects caused by his active negligence in making repairseither under a covenant to do so or by voluntarily undertaking such repairs; but the landlord is not liable for injuries to the tenant or to invitees of the tenant where he does not undertake such repairs to remedy defects existing in the premises. Lahtinen v. Continental Building Co., 339 Mo. 438, 97 S.W. 2d 102; Bender v. Weber, 250 Mo. 551, 157 S.W. 570, 46 L.R.A., N.S., 121; Martin v. Shryock Realty Co., 236 Mo.App. 1265, 163 S.W.2d 804.
If the landlord retains control of certain portions of the premises, such as common hallways, porches, etc., he can be held liable for personal injuries resulting from failure to repair such common hallways, porches, etc.; but where he merely obligates himself to make repairs to premises in the exclusive possession of the tenant, and reserves the right to enter the premises for that purpose, he does not retain the control necessary to liability. Lahtinen v. Continental Building Co., 339 Mo. 438, 97 S.W.2d 102.
The plaintiff's own evidence, which we have heretofore reviewed, precludes recovery under either of the foregoing theories.
Even if it can be said that appellants in the case at bar were under a duty to repair the defect in question, under the provisions of the lease imposing on them the duty to make structural repairs, no action in tort is maintainable by the lessee or his invitee by reason of the breach of that duty. Lahtinen v. Continental Building Co., 339 Mo. 438, 97 S.W.2d 102; Clark v. Chase Hotel Co., 230 Mo.App. 739, 74 S.W.2d 498; Davis v. Cities Service Oil Co., Mo.App., 131 S.W.2d 865; Logsdon v. Central Development Ass'n, Inc., 233 Mo.App. 499, 123 S.W.2d 631; Mathews v. Galbraithe et al., Mo.App., 238 S.W. 554; Bender v. Weber, 250 Mo. 551, 157 S.W. 570, 46 L.R. A., N.S., 121.
Where, however, at the time of the execution of the lease there are latent defects in the premises which are known to the lessor and not known or discoverable by the tenant in the exercise of due care, and which involve an unreasonable risk of bodily harm to persons upon the premises, the lessor is under a duty to disclose to the tenant the existence of such defects, and, if he conceals the presence of such defects, he will be liable for personal injuries resulting to the tenant or to invitees of the tenant from such defects. Roach v. Herz-Oakes Candy Co., et al., 357 Mo. 1236, 212 S.W.2d 758; Restatement of the Law of Torts, Vol. 2, Sec. 358, p. 969; Burton v. Rothschild, 351 Mo. 562, 173 S.W.2d 681; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844; Mahnken v. Gillespie, 329 Mo. 51, 43 S.W. 2d 797; Whiteley v. McLaughlin, 183 Mo. 160, 81 S.W. 1094, 66 L.R.A. 484.
The duty imposed under the above mentioned rule would, of course, be a continuing one and would impose upon appellants the obligation to disclose the existence *599 of known latent defects, even though they were not the lessors when the lease was made.
Do the facts in this case permit recovery under the above mentioned theory by application of the res ipsa loquitur doctrine? In the Kelly case, supra, it was held that even though the tenant was in exclusive possession of the demised premises the res ipsa loquitur doctrine was applicablethe other elements of the doctrine being presentbecause the lessor reserved the right to enter the premises for the purpose of examining the condition thereof and to make such repairs as he might see fit to make. In the case at bar there was no such provision in the lease. However, there was an obligation imposed on the lessor to make structural repairs, and a right to enter for that purpose must be implied as a condition of the lease. Such being the case, we must hold (following the Kelly case) that there was a sufficient measure of control present to satisfy the requirements of the res ipsa loquitur doctrine in that respect. Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S.W.2d 90, 138 A.L.R. 1065. But, other facts must be present in order to make a res ipsa loquitur case. Not only must there be some control of the place in question, but the event relied on must bespeak negligence, and in order to justify recovery against appellants under the said doctrine the event must point to some negligence appertaining to their control of the premises.
In the Kelly case, supra, as well as in Walsh v. Southwestern Bell Telephone Co., supra, the court held that, under the facts shown, the jury could find negligent construction of the building which existed at the time of the lease. This was sufficient to impose liability for injuries to a pedestrian on a public sidewalk. But the inferences drawn in the said Kelly and Walsh cases were with reference to the condition of the thing itself and not as to the state of mind of the owner.
In the case at bar, it is not sufficient to impose liability on these appellants merely because of negligent construction of the building, and that it was in that condition at the time of the lease, but it must also be found that the lessor knew of the defect in question. The existence of such knowledge could hardly be said to be a legitimate inference from the mere fact of the fall of plaster. Plaster does not, according to human experience, ordinarily fall, except for negligent construction or negligent maintenance, and for that reason such negligence may be inferred when it falls; but there is no basis in human experience to draw an inference that an owner has knowledge of a latent defect, such as caused the fall in this case. Therefore, one of the basic elements necessary to the imposition of liability is absent in this case, namely, knowledge on the part of appellants of the latent defect in question. Furthermore, plaintiff's own evidence destroyed any basis for imposing liability under the doctrine of res ipsa loquitur. Heisler, who was plaintiff's witness, testified to facts showing that appellants could not have become aware of the defect without tearing down the ceiling. Heisler testified, and without contradiction, that he inspected the ceiling daily, and that there was nothing to indicate there was anything wrong with it. Thus, by affirmative proof, plaintiff has eliminated the possibility of an inference of the existence of a necessary element in her case.
In our opinion, the trial court erred in failing and refusing to direct a verdict for appellants. The judgment is reversed.
HUGHES, J., absent when case was argued and submitted.
McCULLEN, J., concurs.