Patricia FLOURNOY, a Minor, by Julia Gilbert, Her Next Friend, (Plaintiff) Respondent,

v.

Catherine KUHN and Harry M. Fine Realty Company, Inc., (Defendants) Appellants.

No. 31473.

St. Louis Court of Appeals.
Missouri.
April 21, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied
May 18, 1964.

Robert C. Ely, Schwartz & Ely, Burton H. Shostak, St. Louis, for appellant.

Don B. Sommers, Barnhart & Sommers, St. Louis, for respondents.

WOLFE, Judge.

This is an action for damages arising out of injuries which the plaintiff sustained when the railing of a second-story porch gave way and she fell from the porch to the ground. The plaintiff was the daughter of a tenant who occupied the premises of which the porch was a part. The defend-

ants were the owners and landlords who rented the premises to the plaintiff. There was a verdict and judgment for the plaintiff in the sum of $15,000, from which the defendants have appealed.

The building where the occurrence took place was a four-family, brick flat. It was located on the north side of Horton Place, in the City of St. Louis. There were separate entrances from the ground floor porch to each of the flats. This ground floor porch was roofed by a second floor porch. The second floor porch was unroofed and divided by a railing, so that each upstairs tenant had a small porch of its own. A door in each of the upper flats opened out onto its porch. The porch had a railing. This railing was along the front and sides of the porch. It was connected to corner posts and supported by vertical slats. There was a center post in front from which a railing ran back to the wall of the building and divided the porch in half.

The property had been sold to the Fine Realty Company, with defendant Catherine Kuhn as a straw party, on April 4, 1958, and it was managed by the Fine Realty Company. The plaintiff moved into one of the second floor apartments in August of 1958 with her mother, who was a month-to-month tenant. Her mother testified that when she moved into the apartment, she looked the place over and everything looked "nice". The porch railing did not look rotten. She did not know if the porch railing had been freshly painted, but it looked nice, and for ten months during her occupancy she had no trouble with it. She was never told anything about the porch railing.

On July 1, 1959, the plaintiff was attending summer high school. She returned home at noon, and around five o'clock that afternoon her brother and two other boys came to the apartment. One of them named Rogers wanted to meet a girl who lived in the downstairs apartment. They waited for the girl to come home. The plaintiff was in the livingroom, which had

a door that opened onto the porch, and Rogers and the other boy were on the porch. Rogers was facing the apartment and leaning against the rail that paralleled the street. He was facing the other boy, who was leaning against the wall. The brother of the plaintiff was in the yard. The girl that Rogers was to meet came down the street, and plaintiff's brother called up to Rogers, "Here she is."

Rogers turned and, with both hands on the railing and his weight upon it, looked down. The plaintiff came from the livingroom and went to the railing, put her left hand upon it, and leaned over to see the approaching girl. As she leaned over, the rail broke and the whole front railing fell off. She and Rogers fell from the porch, with Rogers landing on the steps of the lower porch and the plaintiff landing upon the ground. The extent of her injuries will be more fully set out in passing upon the defendants' point charging that the verdict is excessive.

Mrs. Rybolt, a former tenant of the apartment in which the plaintiff lived, testified that she had lived in the apartment for four years. She moved out of it in August of 1958, which was the same month that the plaintiff's family moved in. She stated that the porch railing was bad and that the corner post would sway. She reported the condition to Thompson Realty Company, who had owned the building prior to the time that the defendants acquired it, but they did nothing about it. After the Fine Realty Company purchased the building, the premises were inspected by a man who she thought was Mr. Fine. She told him that the front porch railing was loose. She saw splinters and cracked wood and the corner post pulling away from the front of the porch. She knew of no repairs made to the front railing, but the defendants repaired the first four steps and the floor of the downstairs porch. They painted the railing upstairs.

The corner post which gave way was set in the floor of the porch. It was not a

solid post but was made of four one-inch by eight-inch boards, each board forming a side of the square post. After the railing fell, photographs were taken and the photographer who took the pictures testified that the wood was soft and rotten. The Rogers boy testified that the whole bannister was rotten. The plaintiff's mother, who looked at the post after it had fallen, said it was dark and soft inside.

The defendants' testimony discloses that the premises had been inspected after they acquired the property. There was testimony that repairs had been made about the premises, but no one knew of any repairs to the upstairs bannister. The bannister was painted, and the painter testified that he saw no rotten wood. He was asked if he put in putty to fill cracks in parts of the bannister, and he had no recollection of having done so.

The appellants first assert that the court erred in overruling the defendants' motion for a directed verdict at the close of the plaintiff's case and at the close of all of the evidence. It is maintained that plaintiff failed to make a submissible case. This contention is predicated upon the theory that the defendants had no actual knowledge of the defective porch railing, and that there was no evidence that the condition existed at the time of the letting of the premises. We are cited to O'Gorman v. Kansas City, 233 Mo.App. 124, 93 S.W.2d 1132; Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 S.W.2d 758; Vollrath v. Stevens, 199 Mo.App. 5, 202 S.W. 283; Warner v. Fry, 360 Mo. 496, 228 S.W.2d 729.

All of these cases are quite distinguishable upon the facts. The evidence in these cases either disclosed that the landlord's knowledge of the offending condition was lacking or that the condition was obvious to the party injured. As we stated above, in the instant case some one for the defendants did inspect the premises after the defendants acquired it, and was told of the loose bannister. This was before the plaintiff had moved in, and it appears to be sufficient evidence to take the matter of the defendants' knowledge of the defective railing to the jury. It is true that the rotten condition may not have been known and may have progressed during the plaintiff's occupancy. This, however, does not affect the evidence that the defendants had knowledge that the bannister was loose. This was a dangerous condition, no matter what its cause may have been.

The next point raised is that a verdict-directing instruction given at the request of the plaintiff was erroneous. The instruction starts by requiring findings that prior to the plaintiff's occupancy of the premises the posts to which the railing was attached were insecure and unsafe, that this was unknown to the plaintiff's family and to the plaintiff, and would not have been discovered by them by reasonable inspection. It continues:

"* * * if you further find that the defendants knew or *in the exercise of ordinary care could have known of the dangerous and not reasonably safe condition* of said railing and posts prior to plaintiff's occupancy and in time to have remedied the condition or to have warned plaintiff and her parents of such condition, and that the defendants failed to do either * * *."
(Emphasis ours.)

The italicized portion is the part of the instruction against which the defendants direct their complaint. They contend that before a lessor of land may be held liable to a tenant for injuries caused by any natural or artificial condition of the premises let, it must be shown that the lessor actually knew of the condition or the risk involved, and that he is under no duty to discover it.

The plaintiff-respondent, in seeking to support the instruction, relies chiefly upon the case of Kennedy v. Hartwig-Dischinger Realty Co., Mo.App., 201 S.W.2d 475, from which the plaintiff took the instruction given in the case here under consideration. In that case the point before us here was

never raised. The case also differs in fact from the evidence before us here, as there was evidence in that case that the landlord had negligently repaired a broken portion of the bannister.

The plaintiff also cites Meade v. Montrose, 173 Mo.App. 722, 160 S.W. 11; Meyers v. Russell, 124 Mo.App. 317, 101 S.W. 606; and Streckenfinger v. Bullock, Mo.App., 60 S.W.2d 661. In the case of Meyer v. Russell, there was an agreement to keep the premises in repair. In the other two cases the landlord himself had made a faulty and dangerous construction upon the premises.

■ These cases are not in point, for where the exclusive possession rests in the tenant, as it did in the instant case, the landlord is not generally liable for injuries caused by defects. He is liable where he is under an agreement to repair or voluntarily undertakes repairs, and the defects are caused by his negligence in so repairing. Grimmeissen v. Walgreen Drug Stores, Mo.App., 229 S.W.2d 593. He is also liable where, at the time of the execution of the lease, there are latent defects which are known to the lessor and are not known or discoverable by the tenant in the exercise of due care, and which involve an unreasonable risk of bodily harm to persons upon the premises. A lessor is under a duty to disclose such defects, and he is liable to the tenant or the tenant's invitees for injuries resulting from such defects if he fails to disclose them to the tenant or conceals the presence of such defects. Grimmeissen v. Walgreen Drug Store, supra; Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 S.W.2d 758; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844.

■ It is in this last mentioned class of cases that the instant case falls, but the landlord must have knowledge of the dangerous defect. A different rule applies where such defect is in areas of common use or other areas over which the landlord retains control. There he is under a duty to keep those portions of the premises in a reasonably safe condition. Tucker v. Taksel, Mo.App., 345 S.W.2d 385; Buchanan v. Wolff, Mo.App., 105 S.W.2d 26; Peterson v. Brune, Mo.Sup., 273 S.W.2d 278.

■ Under the instructions given, the jury might have found that the landlord did not know of the condition of the bannister, but decided to hold him liable because he could have known. This would be an extension of the landlord's duty, not warranted under the law, and the instruction is therefore erroneous.

■ Because of this error, the cause must be remanded for a new trial. If no question had been raised in relation to the amount of the verdict, it would be remanded under Rule 83.13(c), V.A.M.R. for trial on the issue of liability only. But appellants claim that the award of $15,000 is excessive, and if it is, a new trial should be upon all of the issues.

■ The plaintiff, in falling from the porch, landed on the ground. She was taken to the Homer Phillips Hospital, where X-rays were taken. Her right arm was put in a cast, and an "ace" bandage was put on her left arm. She was then sent home, and her mother later took her to a Dr. Payne. Dr. Payne treated her then and took additional X-rays. He testified that there was an incomplete fracture of the neck of the left radius, which healed in six weeks and caused no further trouble. The right radius was fractured at the proximal and distal ends. The fracture of the proximal end healed leaving a 15 degree limitation of flexion in the right elbow and an atrophy of the right deltoid muscle. The distal end of the radius had a comminuted fracture, with some impaction. This healed leaving the plaintiff with some limitation of motion in the wrist. Her right grip was good, and she had full use of her fingers.

The plaintiff testified that she was a practical nurse and was studying to be a trained

nurse. She said that her handwriting was not as good as it was before her injury, and that she tired quickly when she lifted heavy things. The plaintiff lost no time from school or work because of the injury, and no special damages of any nature were shown.

A case of injuries, to some extent similar in nature to those sustained by the plaintiff, was considered in Ciardullo v. Terminal Railroad Ass'n of St. Louis, 289 S.W.2d 96, 61 A.L.R.2d 516, in which the Supreme Court of Missouri ordered $3,000 remanded on a judgment for $15,000. We are of the opinion that $15,000 is somewhat excessive in the case before us, and in view of this it should also be tried anew upon the issue of damages.

The cause is reversed and remanded for a new trial.

RUDDY, P. J., and ANDERSON, J., concur.