Betty COATES, Plaintiff-Respondent,

v.

Wade J. DEWOSKIN, Louis Dewoskin, Sam Dewoskin and Stella Dewoskin, Defendants-Appellants.

No. 31546.

St. Louis Court of Appeals.

Missouri.

May 19, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied June 22, 1964.

Richard M. Stout, Kent E. Karohl, St. Louis, for defendants-appellants.

Donald P. Gallop, Fred Roth, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

The verdict and judgment in the trial court in this case was for the plaintiff in the amount of $2,900.00. Among the several allegations of reversible error briefed by the defendants are two that we hold determinative of this appeal. These are the contentions that plaintiff's verdict-directing instruction was erroneously given and that the defendants' motion for a directed verdict should have been sustained. We will therefore limit our statement of the factual situation to those facts bearing upon those contentions.

The plaintiff's theory, as stated in her petition, was that there was a hole in the ceiling of the bedroom of this apartment of which the defendants knew at the time they let the apartment and which the defendants had caused to be covered by two or three layers of ceiling paper so that the plaintiff did not know of the existence; and that the existence of this hole made the ceiling unsafe and constituted a defective condition the existence of which defendants had a duty to warn plaintiff; and that she was injured by plaster falling from the ceiling.

The evidence in the light we are required to view it was that there was a hole in the ceiling plaster in one room in this apartment. This hole was there when the defendants let the premises to the plaintiff and had been covered over by some of de-

fendants' employees by placing several layers of wallpaper over the entire ceiling. The plaster was not replaced nor was any other material used to fill the hole which was about four feet wide and three and one-half feet long. A few months before the incident occurred, plaintiff noticed water marks on the ceiling in the area of this hole. These marks caused her to put a dishpan on the second floor of the apartment directly over this area. She admitted that on occasion ("several times") the dishpan had overflowed, and the water went into the plaster ceiling of the room below. On the occasion when she was struck by the plaster she was sleeping face down in a bed which was placed in the northwest corner of the room. This was the location of the hole in the ceiling. The plaster struck her head, neck and back.

Those portions of plaintiff's verdict-directing instruction pertinent to our inquiry hypothesized that at the time of the letting there existed upon said premises a portion of the northwest corner of the ceiling in the middle room on the first floor of her apartment which she used as her bedroom, which was defective, in that it contained an open hole approximately four feet wide which was concealed by being covered over by several sheets of wallpaper; that "* * * such condition of said ceiling rendered it not reasonably safe for use * * *"; that plaintiff did not know of this condition of the ceiling and could not have discovered it by reasonable inspection; that "* * * the defendants at the time of the letting of said premises to the plaintiff knew of said condition or in the exercise of ordinary care could have known of said condition * * *"; that defendants failed to inform the plaintiff of the condition; and that "* * * said ceiling in the northwest corner of said room fell upon her body as a direct result of the said defective condition * * *."

Among the reasons advanced by the defendants to support their allegation of error with respect to the giving of In-

148

struction No. 1 is the contention the instruction erroneously permitted a recovery against defendants if the jury found that, in the exercise of ordinary care, the defendants could have known of the condition of the ceiling. In the case of Flournoy et al. v. Kuhn and Harry M. Fine Realty Company, Inc., Mo.App., 378 S.W.2d 264, this court held that the giving of an instruction hypothesizing the " * * * defendants knew or in the exercise of ordinary care could have known of the dangerous and not reasonably safe condition * * *" was prejudicially erroneous. In that opinion this court, by Wolfe, J., pointed out the difference in the degree of knowledge required in cases brought upon a theory of negligent repair or where the defect exists in an area under common control, on one hand, and those cases, such as Flournoy and the instant case, where the defect exists in an area under exclusive control of the tenant. In the former type of case, the hypothesization set out above is permissible. Kennedy v. Hartwig-Dischinger Realty Co., Mo.App., 201 S.W.2d 475; Taylor v. Hitt, Mo.App., 342 S.W.2d 489. In the latter type of case this court held in Flournoy the language allowing liability if the jury found the landlord could have known of the defect to constitute an " * * * extension of the landlord's duty, not warranted under the law * * *." The giving of Instruction No. 1 constitutes reversible error.

It follows that this judgment must be reversed. Whether that reversal should be outright or whether this cause should be remanded for a new trial rests upon defendants' contention the trial court should have sustained its motion to dismiss offered at the close of all the evidence. In support of this contention the defendants contend that plaintiff failed to prove any "actionable negligence."

 The duty defendants owed the plaintiff is set forth in the Flournoy case as follows: " * * * where the exclusive possession rests in the tenant, as it did in the instant case, the landlord is not generally liable for injuries caused by defects. He is liable where he is under an agreement to repair or voluntarily undertakes repairs, and the defects are caused by his negligence in so repairing. Grimmeissen v. Walgreen Drug Stores, Mo.App., 229 S.W. 2d 593. He is also liable where, at the time of the execution of the lease, there are latent defects which are known to the lessor and are not known or discoverable by the tenant in the exercise of due care, and which involve an unreasonable risk of bodily harm to persons upon the premises. A lessor is under a duty to disclose such defects, and he is liable to the tenant or the tenant's invitees for injuries resulting from such defects if he fails to disclose them to the tenant or conceals the presence of such defects. Grimmeissen v. Walgreen Drug Stores, supra; Roach v. Herz-Oakes Candy Co., 357 Mo. 1236, 212 S.W.2d 758; Bartlett v. Taylor, 351 Mo. 1060, 174 S.W. 2d 844."

 The plaintiff's verdict-directing instruction required the jury to find that the ceiling fell upon the plaintiff's body " * * * as a direct result of the said defective condition." To say that an injury is a direct result of an alleged act of negligence is the same as stating that it is the "proximate result" of that act; "direct" being a synonym of "proximate." Applebee v. Ross, Mo., 48 S.W.2d 900, 1. c. [4], p. 902, 82 A.L.R. 288. The proximate or direct cause of an event is that which, in a natural and continuous sequence, unbroken by any new cause, produces the event and without which the event would not have occurred. King v. Ellis, Mo., 359 S.W.2d 685.

In the instant case it is obvious that the maintenance of this hole in the ceiling, in and of itself alone, could not cause the plaintiff's injury for holes do not fall and injure persons beneath them. The plaintiff's verdict-directing instruction submits the maintenance of the hole so weakened the remaining ceiling that it constitutes a

condition which involved an unreasonable risk of bodily harm to persons on the premises. However, the plaintiff failed to offer testimony by any expert or any witness that the existence of this hole in the ceiling weakened the rest of the ceiling. There is not one scintilla of evidence on that issue in this transcript. Recognizing the transcript is silent, the plaintiff contends in her brief: "The latent defect was created by the covering with paper of the hole and the weakened ceiling area without putting plaster and lathe therein, clearly creating a condition which the ordinarily prudent man, from experience, would foresee could result only in the ultimate falling of still another portion of the ceiling immediately adjacent to the hole which no longer was adequately supported. * * * It is submitted that it is a matter of common knowledge that a ceiling not completed with plaster or other similar material leaves the immediate areas around a hole in such a ceiling in a weakened condition to the point that material around the hole would, in time, fall because it is not supported."

We cannot agree that this is a matter the jury would be entitled to find without basing that finding upon any evidence. It may be that a plastered ceiling is so constructed that the existence of a hole of the size and character of that in the evidence will inevitably and in and of the fact of its existence cause the ceiling surrounding the hole to fall. On the other hand the characteristics of plaster may be such that the existence of the hole does not, in and of itself, mean that the rest of the ceiling must inevitably fall without the intervention of any other cause. In any event, neither hypothesis is so certain nor is either such a matter of common knowledge that the jury could be allowed to find either without the assistance of some evidence upon the issue. This would seem to be particularly so in the instant case where the plaintiff's own evidence as to water overflowing the pan she placed on the floor above the hole in the ceiling and that this water got into the plaster. In this connec-

tion it must be remembered that there is absolutely no pleading nor indication in the testimony that defendants caused the roof leak nor any intimation that they even knew that the roof leaked.

 The submission in the plaintiff's verdict-directing instruction that the condition of the ceiling with the hole in it " * * * rendered it not reasonably safe for use * * *" and that the ceiling fell upon the plaintiff " * * * as a direct result of said defective condition * * *" is unsupported by the evidence, and the trial court should have sustained the defendants' motion for a directed verdict. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion of BRADY, C., is adopted as the opinion of this court.

The judgment is reversed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.